[Sac. No. 238. In Bank.—July 23, 1898.]

## THE PEOPLE, Respondent, v. RECLAMATION DISTRICT NO. 136 et al., Appellants.

RECLAMATION DISTRICT — QUO WARRANTO — PLEADING—USURPATION.—In a proceeding in *quo warranto* prosecuted by the state to exclude a reclamation district, and the persons claiming to constitute it, from all corporate rights, it is sufficient to .allege the ultimate fact that the defendants are exercising the franchise without authority of law, and the complaint is not defective in. not alleging specifically the acts constituting the usurpation.

ID.—VALIDITY OF INCORPORATION—ESTOPPEL OF STATE.—The state is not estopped from questioning the validity of the incorporation of a reclamation district, by reason of inaction upon its part for 'many years, during which defendants have expended large sums of money in reclaiming the land embraced therein, and have enjoyed the fruits of their labors.

ID.—PETITION FOR ORGANIZATION—WEEKLY PUBLICATION IN DAILY PAPER.— Under section 30 of the act providing for the organization of reclamation districts (Stats. 1867–68, p. 507), requiring the petition therefor to be published "for four weeks next preceding the hearing thereof in some newspaper published in the county," a publication thereof once each week in a daily newspaper published in the county, for four weeks next preceding the hearing, is a sufficient compliance with the law.

ID.—VALIDITY OF PETITION—SIGNATURES BY AGENTS.—A petition for the organization of a reclamation district is not void upon its face, merely because the names of some of the owners of land were attached to to it by other parties. If the names were signed by proper authority, the signatures were those of the owners.

ID.—JURISDICTION OF SUPERVISORS—APPROVAL OF PETITION—ADJUDICATION. The board of supervisors had power to decide upon the genuineness of the signatures to the petition for the organization of the reclamation district; and the approval of the petition by the board was conclusive adjudication of that fact.

APPEAL from a judgment of the Superior Court of Sacramento County and from an order denying a new trial. A. P. Catlin, Judge.

The facts are. stated in the opinion of the court.

Albert M. & Hiram W. Johnson, and Grove L. Johnson, for Appellants.

W. F. Fitzgerald, Attorney General, and W. A. Gett, Jr., for Respondent.

GAROUTTE, J.—This is a proceeding by *quo warranto* to exclude the defendants from all corporate rights. The demurrer to the complaint was overruled, and answer filed. When the case was called for trial defendants moved for judgment on the pleadings, on the ground that the complaint did not state facts sufficient to constitute a cause of action, "for the reason that the pleading only averred that the defendants were usurping the functions of a corporation, there being no allegation of the particular circumstances constituting such usurpation." The motion for a nonsuit was denied. Judgment passed for plaintiff, and defendants now appeal from that judgment, and also from the order denying their motion for a new trial.

It is insisted that the complaint is fatally defective in not alleging specifically the acts constituting the usurpation. Many cases are cited to support this contention, but a sufficient answer to them is found in the fact that they are not cases of *quo warranto.* In a proceeding prosecuted by the state, of the character here inaugurated, it is sufficient to allege the ultimate fact, namely, that the defendants are exercising the franchise without authority of law. (*People ex rel. Samuell v. Cooper,* 139 Ill. 461; *People ex rel. Dickson v. Clayton,* 4 Utah, 421, and cases there cited.)

The trial court found that the board of supervisors had no jurisdiction to form the district, and that the district was not legally organized. The most serious objection to the validity of the organization of the district rests upon the publication of the petition of the landowners for its formation. By section 30 of the act of the legislature (Stats. 1867-68, p. 507) the petition is required to be published "for four weeks next preceding the hearing thereof in some newspaper published in the county." As to the character of the publication made in this case, the affidavit of the printer is as follows: "That a true copy of the annexed petition (which is made part of this affidavit) has been published in said paper (the Sacramento 'Daily Record') once a week for four weeks, commencing the fifth day of December, 1871, to and including the second day of January, 1872." Do the facts set out in this affidavit fill the measure required by the statute? In other words, was the petition published four weeks next preceding the hearing thereof? The hearing of the

petition was fixed for January 3, 1872.   Giving the affidavit of the printer a fairly liberal interpretation it appeared therefrom that the petition was published the fifth, twelfth, nineteenth, and twenty-sixth days of December, and January 2d.   If such a publication had been had in a weekly newspaper published in the county it would have come strictly within the requirements of the statute; but, Does the fact that the publication is had in a daily newspaper once a week for the required time satisfy the law?   It must be borne in mind that the number of publications is not specified by the statute.   There is no direct adjudication in this state upon the question, but upon examination of the authorities of other states we find many cases holding publications of notice in daily papers once a week for the time prescribed by the notice a sufficient compliance with the law. It is unnecessary to quote from these cases.   It is sufficient to say that they squarely meet the point and support the validity of such a publication.   We simply cite them: *Wing v. Dodge,* 80 Ill. 564; *Wood v. Knapp,* 100 N. Y. 109; *Thurston v. Miller,* 10 R. I. 358; *Matter of Harris, Petitioner,* 14 R. I. 637; *Bowen v. Argall,* 24 Wend. 501; *Alexander v. Alexander,* 26 Neb. 68; *Dayton v. Mintzer,* 22 Minn. 393; *Brewer v. Springfield,* 97 Mass. 152; *Frothingham v. March,* 1 Mass. 247.   To support plaintiff's position the case of *Hellman v. Merz,* 112 Cal. 661, is relied upon, but that case fails to reach the mark.   The reasons for the conclusion there declared are not as full and complete as they could well have been stated.   The conclusion nevertheless in that case is correct and absolutely sound.   The notice there required was the probate notice provided for by section 1549 of the Code of Civil Procedure.   The subsequent section, 1705, declares in effect that the notices provided for by section 1549 must be published as often as the paper is published during the time over which the notice is extended, unless otherwise directed by the court or judge.   This mandatory requirement equally applies to both weekly and daily papers.   In the Hellman case the court or judge did not otherwise direct the publication of the notice, and, it being published in a daily paper, should have been published every day that the paper was issued prior to the day of sale.   But such publication was not had, and therein consisted its invalidity.   In this case we conclude the notice of publication was sufficient.

It is contended that the state is estopped from questioning the validity of this corporation. It is insisted that an estoppel has been created by reason of inaction in the matter upon the state's part for so many years, during which time defendants have expended large sums of money in reclaiming the land embraced within the lines of the alleged district, and have enjoyed the fruits of their labors during all that time. These and kindred circumstances in no way create an estoppel against the state. The continued exercise of a franchise or right is a continued usurpation upon which a new cause of action in favor of the state is ever arising.

It is claimed that the petition is void upon its face in this: that it appears therefrom that the names of some of the owners of land were attached to it by other parties. If these names were signed under express authority of the owners of the land, then the signatures were those of the owners. In passing upon the merits of the petition the genuineness of these signatures was a matter essentially within the power of the board of supervisors to decide. And the approval of the petition by the board was an adjudication of the fact, an adjudication that was absolutely conclusive. (*Humboldt Co. v. Dinsmore*, 75 Cal. 604; *Farmers' Bank v. Board of Equalization*, 97 Cal. 318.)

For the foregoing reasons the judgment and order are reversed.

Van Fleet, J., McFarland, J., and Harrison, J., concurred.

TEMPLE, J., dissented, concurring in the opinion heretofore rendered in Department.

The following is the opinion above referred to by Mr. Justice Temple, rendered in Department One on the 10th of November, 1897:

CHIPMAN, C.—This is a proceeding by *quo warranto* to exclude the defendants from all corporate rights. A demurrer to the complaint was overruled and defendants answered. When the case was called for trial defendants moved for judgment on the pleadings on the ground that the complaint did not state facts sufficient to constitute a cause of action, in that, though

the complaint averred that defendants were usurping the functions of a corporation, it is not alleged in what such usurpation consists. This motion was denied.

. Judgment passed for plaintiff upon the trial, and defendants appeal from the judgment and from the order denying motion for new trial.

1. Defendants contend that the complaint is insufficient because it states only a conclusion of law, and does not state any reason why the defendant corporation is invalid, and that it is settled law in this state that in *quo warranto* proceedings the complaint must allege specifically the defects in the formation of the corporation. (Citing *People v. Board, etc.,* 27 Cal. 655; *Hedges v. Dam,* 72 Cal. 520; *Spaulding v. Wesson,* 84 Cal. 141; *Ohm v. San Francisco,* 92 Cal. 450.) None of the cases cited were *quo warranto* cases.

It seems to be well settled that an information to oust a pretended municipal corporation from the exercise of corporate franchises need only allege that such corporation is exercising them without lawful authority. It was said in *People v. Cooper,* 139 Ill. 461, that "the sole purpose of the information is to require the defendants to show by what warrant they are holding and exercising the office. . . . . The rule of pleading in cases of this character is that, where an information is filed to test the question of intrusion or usurpation of an office, it is sufficient to allege generally that the defendant is in possession of the office without lawful authority." The rule thus stated is sustained by ample authority. (High on Extraordinary Legal Remedies, sec. 713; *Palmer v. Woodbury,* 14 Cal. 43; *Flynn v. Abbott,* 16 Cal. 359; *Enterprise v. State,* 29 Fla. 128; *People ex rel. Kern v. McIntyre,* 10 Mont. 166; *People ex rel. Dickson v. Clayton,* 4 Utah, 421.) In the last-mentioned case the question is fully considered and the authorities reviewed. The only exception we have found is where the information is not by the attorney general, but is upon the relation of a private person contesting the disputed office. (*State ex rel. Cooper v. Hamilton,* 29 Neb. 198.)

2. The court found that the board of supervisors had no jurisdiction to form the district, and that it was not legally organized. This finding is sought to be sustained by plaintiff upon several grounds, only one of which we deem to possess merit.

It is claimed that the publication of the petition required by section 30 of the act of March 28, 1868 (Stats., p. 507), under which the corporation was organized, is fatally defective. The objection was made at the trial, but was overruled. The affidavit is as follows: "That a true copy of the annexed petition (which is made part of this affidavit) has been published in said paper (the Sacramento 'Daily Record') once a week for four weeks, commencing the fifth day of December, 1871, to and including the second day of January, 1872." The act, section 30, says: "The petition . . . . shall be published for four weeks next preceding the hearing thereof in some newspaper published in the county," etc.

· The petition was heard January 3, 1872. From December 5th to January 2d, both days inclusive, there were exactly four weeks. "A week consists of seven consecutive days." (Pol. Code, sec. 3258.) If the publication had been in a weekly paper, commencing on December 5th, and had been repeated on the 12th, 19th, 26th, and January 2d, it would have satisfied the statute. It was in a daily paper, however, and the affidavit does not show the intervening days on which publication was made; nor that it was made in each issue of the paper. It states that the petition was published once a week for four weeks, commencing December 5th, to and including January 2d. Giving the affidavit the very liberal construction that the publication is shown to have occurred at regular intervals of one week, which is the utmost that can be said of it, was this sufficient? The question is presented: Where the statute is silent as to the number or frequency of publications required, but requires publication of the petition in some newspaper "for four weeks next preceding the hearing thereof," is publication once a week in a daily newspaper sufficient?

· The question was suggested in *Williams v. Sacramento County,* 58 Cal. 237, where a similar statutory requirement of publication in a similar case was before the court, but the point was not decided. It was held, however, that "the statutory publication was one of the jurisdictional steps in the proceedings, and unless the petition was published in accordance with the requirement of the statute all of the subsequent proceedings were invalid." In *Hellman v. Merz,* 112 Cal. 661, the question was in-

volved in the matter of sale of real property of a decedent. Section 1549 of the Code of Civil Procedure provides that, when real property is ordered to be sold at private sale, notice of the sale must be published in a newspaper for two weeks successively next before the day on or after which the sale is to be made. In that case the sale was ordered to be made on or after April 21, 1892. Notice was published for fifteen consecutive days in a daily paper, commencing April 5th (Tuesday) and including April 19th (Tuesday), 1892, each day inclusive and giving notice that such sale was to be made April 21, 1892 (Thursday). It was necessarily published April 12th (Tuesday), having been published daily as shown by the affidavit, thus making three insertions at intervals of one week. The court said: "This publication in insufficient to satisfy the requirements of the statute, for if publication in a daily paper may be omitted for one day, then it may be omitted for two or more days, and there can be no certainty as to when the last publication must be made."

The first week began Tuesday, April 5th, the second Tuesday, April 12th, and the third Tuesday, April 19th, and had the publication been made in a weekly paper issuing on these days the notice would undoubtedly have been good, for it would have appeared in each issue of the paper and for two weeks successively next before the day of sale. But it was in effect held that publication in a daily paper did not impart notice from week to week (as it would have done had the statute read *once a week* for two weeks), otherwise the notice published on the 19th would have authorized the sale on the 21st. It follows that the notice given in the present case was not sufficient, as it clearly appears to have been published only once a week in a daily paper.

3. Defendants claim that the state is estopped to question the validity of the corporation; that defendants have been permitted to expend their means in reclaiming the land, and, without the intervention of trustees and in their own way, have been suffered for twenty years to enjoy the fruits of their labor and the advantages of the corporation, and to now deprive them of these would be a wrong for which no compensating benefits to the state or anyone are shown. No facts were set up in the answer by way of estoppel, and none appear in the record which could by any possibility have the effect to conclude the state

from asserting that the corporation has no legal existence. The suggestion that defendants have for a long period of time been suffered to exercise corporate rights and have expended large sums under their franchise presents no element of estoppel in this case. It was said by Justice McKinstry in *People v. Stanford,* 77 Cal. 360: "The continued exercise of a franchise without right is a continuously renewed usurpation on which a new cause of action arises each day." The general rule is that there is no estoppel against the state. It is true that to this rule there are many exceptions found in the cases, but none, so far as we have been able to learn, where the proceeding was directly against a corporation by a state to test the right of the corporation to exist. Corporations have a beginning only by virtue of compliance with statutory requirements in their formation. (*People v. Selfridge,* 52 Cal. 331; *People v. Montecito Water Co.,* 97 Cal. 276; *Harris v. McGregor,* 29 Cal. 125.) A corporation cannot acquire a legal existence by mere lapse of time.

The judgment and order should be affirmed.

Searls, C., and Belcher, C., concurred.