[S. F. No. 4829.  In Bank.—December 21, 1908.]

## L. M. SHERWOOD et al., Appellants, v. FRANK A. WALLIN et al., Respondents.

CORPORATION UNDER WEST VIRGINIA STATUTE — INCREASE OF CAPITAL STOCK—PUBLICATION OF NOTICE OF MEETING FOR TWO WEEKS.—A statute of the state of West Virginia which merely requires notice of a meeting of stockholders to increase the capital stock of a corporation to be published in a newspaper "at least two weeks before" the meeting, and which does not specify the kind of newspaper with respect to frequency of issue or require the notice to be published for the prescribed time as often as the paper is issued, is sufficiently

complied with by a publication once each week for the two weeks in a newspaper that is issued daily.

ID.—PRESUMPTION AS TO CONSTRUCTION OF STATUTE.—It will be presumed that the construction of such statute in West Virginia would be the same as the construction of a similar statute in the state of California.

ID.—PUBLICATION IN DAILY NEWSPAPER ONCE A WEEK FOR TWO WEEKS. When the date set for the meeting was March 4, 1903, a publication of the notice in the issues of the newspaper appearing on the tenth and seventeenth of February, 1903, constituted the required publication of "at least two weeks" before the meeting.

ID.—CERTIFICATE OF STOCK—ISSUANCE BY DE FACTO OFFICERS.—The issuance of a certificate for stock in a corporation to the actual owner of the stock is a mere ministerial act which the officers of the corporation are bound to perform in the exercise of the routine duties of their office. The issuance of such certificate by persons acting as the *de facto* officers of the corporation would not affect its validity nor impair the right of the stockholder to vote it at a stockholders' meeting, notwithstanding a by-law of the corporation provided that "no certificate of stock shall be valid unless signed by both the president and secretary and sealed with the corporate seal."

ID.—DE FACTO DIRECTORS—CALLING SPECIAL MEETING TO INCREASE CAPITAL STOCK.—Persons who for nearly two years had actually held office as directors of a corporation, with the consent of the corporation, and under color of an election had exercised all the functions of such officers and were in peaceful possession as such directors of all the corporate property with the acquiescence of all the stockholders, are *de facto* directors, and may legally perform such acts, including the calling of a special meeting of the stockholders to increase the capital stock, which are within the scope of the corporate business and the functions of *de jure* directors.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. Frank J. Murasky, Judge.

The facts are stated in the opinion of the court.

Purcell Rowe, and Jordan, Rowe & Brann, for Appellants.

Edwin L. Forster, and Robert R. Moody, for Respondents.

ANGELLOTTI, J.—This is an action instituted by two stockholders of the Golden Key Mining Company, a corporation organized under the laws of the state of West Virginia, and having its principal place of business in the city and

county of San Francisco in this state, wherein all of its property is situate and all of its business is done and all of its stockholders reside, against such corporation and numerous stockholders thereof. The object of the action was to obtain relief by way of injunction and otherwise from certain acts of the defendants other than the corporation, alleged to have been done by said defendants in the furtherance of a conspiracy to deprive plaintiffs of their rights as the owners and holders of a majority of the capital stock of the corporation. Among other acts assailed was one of March 4, 1903, purporting to increase the capital stock of the corporation from one hundred thousand shares of the par value of one dollar per share, to two hundred thousand shares of the same par value per share. The only defendants served with summons or who appeared in the action were the corporation, and Messrs. Wallin, Nauman, and A. W. McQueen. The trial court found against all allegations of conspiracy, and no complaint is made as to these findings. It did find that a certain so-called equalizing issue of capital stock amounting to 10,980 shares, issued under a resolution of May 8, 1900, was invalid, and so decreed by its judgment, and as to this no complaint is made. Otherwise its judgment was in favor of defendants. Plaintiffs have appealed from this judgment, assailing only the conclusion of the trial court as to the validity of the proceedings for the increase of the capital stock from one hundred thousand to two hundred thousand shares, which increase the court found to be regular, legal and valid.

Under the laws of West Virginia in force at the time of the attempted action, any corporation might "by resolution at any general or special meeting of the stockholders, . . . make such reduction or increase in the number of shares of its capital stock, or the par value of each share, as may be decided upon by said stockholders, a majority of the stock . . . being represented by the holders thereof at such meeting in person or by proxy and voting therefor; provided that notice be given by advertisement published at least two weeks before such action in some newspaper of general circulation printed in the county wherein the principal office of such corporation is located, if such office be within this state; and if such office be not within this state, then in some newspaper printed at the capital of this state, of the intention to offer such resolution."

The law further provided that when such a change shall be made, the president of the corporation shall certify the resolution to the secretary of state, who shall issue to the corporation a certificate reciting the resolution and declaring the action to be authorized by law, which certificate shall be received in all courts and places as evidence of the change and of the authority to effect the same. The by-laws of the corporation provided that a special meeting of the stockholders might be called at any time "by a majority of the board of directors," and that at all meetings of stockholders a majority of the shares of stock, whether present in person or by proxy,. shall constitute a quorum for the transaction of business.

A finding of the trial court which is not assailed establishes the fact to be that defendants Wallin, Nauman, and McQueen, and their associates, have ever since March 12, 1901, constituted the *de facto* board of directors of such corporation, having possession of all the records and property thereof and performing all the functions of directors and officers, under an election attempted to be had on March 12, 1901. It is, further established by an unassailed finding that in February, 1903, said *de facto* board issued a call for a meeting of the stockholders to be held on March 4, 1903, for the purpose of so increasing the capital stock. The court found that. due notice of this meeting was given in the manner required by the laws of West Virginia, and that at the meeting of the stockholders held at the time noticed, "there was present and acting throughout a quorum of stockholders." It is as to these two matters only that the claim is made that the findings are not supported by the evidence.

The finding of due notice of the meeting, which means no more than that the advertisement required by the statute was given in all respects as required thereby, was undoubtedly correct in view of the evidence. The certificate of the secretary of state of West Virginia was, under the statute, at. least *prima facie* evidence of the giving of the notice required. by the law. The evidence introduced by plaintiffs to destroy the effect of the certificate showed nothing at variance therewith. It appeared therefrom that the notice was published in the Charleston *Daily News,* a newspaper printed and published daily in the state of West Virginia, in two issues. thereof, to wit: on February 10, 1903, and on February 17,.

1903, "and no more." It is urged that publication in a daily paper, such as the Charleston *Daily News,* should have been made daily for fourteen days. There is nothing in the statute under consideration specifying the kind of newspaper with respect to frequency of issue, or requiring the notice to be published for the prescribed time *as often as the paper is issued* during such times. The requirement is simply that the advertisement be published "at least two weeks before such action in some newspaper," etc. It is settled in this state that a requirement that a notice be published for a designated number of weeks in some newspaper published in the county is fully satisfied by a publication once each week for the designated number of weeks, in a daily newspaper published in the county. (*People* v. *Reclamation District,* 121 Cal. 522, 524, [50 Pac. 1068, 53 Pac. 1085], *Chapman* v. *Zoberlein,* 152 Cal. 216, [97 Pac. 188, 190].) Presumably, the law in this respect is the same in West Virginia., It may be assumed that the language of the statute is such as to require a publication once a week for two weeks before the day noticed for the meeting. As has been seen, the first publication was on February 10, 1903, more than two weeks before the time fixed for the meeting. The two publications, one each week, constituted a publication for two weeks, just as in *Derby* v. *Modesto,* 104 Cal. 515, [38 Pac. 900], a publication for fourteen consecutive days constituted a required publication of "at least two weeks," and the requisite period of two weeks had fully elapsed prior to the day noticed for the meeting. (See, also, *State* v. *Yellow Jacket etc. M. Co.,* 5 Nev. 415.)

As to the finding that there was a quorum of stockholders present at the meeting of March 4, 1903: In order to constitute a quorum it was necessary that more than 44,510 shares should be present and represented. The records of the corporation showed that 56,055 shares were represented at the meeting. This did not include any of the equalizing issue of 10,980 shares held by the court to be illegal. In order to make up said 56,055 shares, however, it was necessary to count 17,500 shares represented and voted by Frank A. Wallin, which stood on the books of the corporation in his name. The claim is that this should not have been counted, for the reason, as we understand the contention of learned

counsel for plaintiffs, that Wallin had no valid certificate therefor, in that the certificate held by him was not signed by the president and secretary of the corporation, and the by-laws provided "No certificate of stock shall be valid unless signed by both the president and secretary and sealed with the corporate seal." By the bill of exceptions the following is made to appear: Wallin had acquired this stock from Geo. W. Mann prior to March 12, 1901, on which day the stock stood on the books in the name of Mann. On the last-named day the *de facto* board of directors organized by the election of Wallin as president and one Cowherd as secretary. Immediately thereafter Wallin surrendered the certificate for 17,500 shares in the name of Mann, and the same was canceled and a new certificate therefor signed by Wallin as president and Cowherd as secretary was issued to Wallin, and an entry of the transfer made on the records of the corporation. There was no other act or proceeding in relation to this certificate until the shares were voted at the meeting of March 4, 1903. Up to the time of the meeting of March 12, 1901, plaintiff L. M. Sherwood was the duly elected, qualified and acting president of the corporation, having been elected in June, 1900, and the by-laws provided that the officers of the corporation should hold their respective offices for one year, and until their successors are chosen and qualified. It is urged that at the time of the issuance of this certificate, Mr. Sherwood was the *de jure* president of the corporation, and that the certificate not being signed by him is ineffectual for any purpose. So far as the record available on this appeal shows, Wallin was the owner of this stock, and the same stood in his name on the books of the corporation. Under these circumstances he was entitled to have the certificate therefor issued to him. The issuance of such certificate was a mere ministerial act which the officers of the corporation were bound to perform in the exercise of the routine duties of their offices. If we assume that such issuance was essential to Wallin's right to vote the stock at the meeting of March 4, 1903 (see, however, Clark and Marshall on Private Corporations, secs. 378b, 653a, and 653b), we have no doubt that the certificate must be held to have been legally issued by the *de facto* officers. The claim of plaintiffs that there was no quorum present at the meeting of March 4, 1903, is based

wholly on the claim as to these 17,500 shares. From what
we have said, it follows that the finding is fully sustained.

The only other point made on this appeal is that the special
stockholders' meeting of March 4, 1903, was not legally called,
for the reason, shown on the face of the findings, that it was
called by those who were found to be only the *de facto* board
of directors.

A valid call for the special meeting of the stockholders was
essential to the validity of the proceedings for the increase of
the capital stock. Under the by-laws, such a call could be
made at any time by a majority of the board of directors.
Did the *de facto* board of directors have this power? We can
conceive of no good reason why it should be held that they did
not. They, under the well-recognized definition of *de facto*
officers of corporations and the other specific facts found
by the court, were the persons who for nearly two years had
actually held office as directors, with the consent of the cor-
poration and, under color of an election, had exercised all the
functions of such offices and were in peaceful possession as
such directors of all the corporate property. (See 3 Clark
and Marshall on Private Corporations, sec. 662.) There is
nothing in the findings to indicate that their assumption of
the office of directors was not acquiesced in by all of the
stockholders, and, under the findings, they must be held to
have been possessed of all the power of *de facto* directors. It
is conceded that such a *de facto* board may legally perform
such acts as are within the scope of the corporation's business.
In 8 Am. & Eng. Ency. of Law, p. 778, 2d ed., we find it
stated that as a general rule the acts of *de facto* officers of a
corporation, within the power of the offices they assume to
hold, are valid and binding on the corporation. In 10 Cyc.
755, it is declared that, as a general rule, such acts are deemed
valid in respect to third persons, the corporation, the share-
holders, and the directors themselves. It is settled in this
state, in accord with the great weight of authority, that a
*de facto* board of directors of a corporation may exercise the
powers of a *de jure* board in the matter of levying assess-
ments on the capital stock. (*San Joaquin L. & W. Co.* v.
*Beecher,* 101 Cal. 70, 80, [35 Pac. 349]. See, also, 3 Clark
and Marshall on Corporations, secs. 499b and 662.) The
principle which upholds the action of *de facto* officers of

corporations has been held to apply to the calling of a meeting for the election of officers. (See 10 Cyc. 325; *Smith* v. *Erb,* 4 Gill, (Md.) 437; *Commonwealth* v. *Smith,* 45 Pa. St. 59.) It is difficult to see why the rule does not apply in the matter of calling a special meeting of the stockholders to consider and act upon any matter pertaining to the corporation, as to which, under the law, the stockholders may act at a special meeting. The calling of such a meeting is the performance of the most ordinary of the duties devolving on corporation directors, and the only effect thereof is to enable the stockholders themselves to determine in the manner provided by law as to matters affecting the corporation and their interests therein, the board of directors being simply the machinery by which the stockholders may be legally brought together.

It appears to have been held in *In re Wheeler,* 2 Abb. Pr. (N. Y.) (N. S.) 361, that where the statute required that every director should be a stockholder, and that notice of a stockholders' meeting to effect an increase of the capital stock should be signed by a majority of the directors, and the notice was signed by four out of the seven acting as directors, but one of the three so signing was not a stockholder, the subsequent vote for the increase of stock was illegal. This is the only case cited which is at all against the view we have stated. No point appears to have been made in that case as to the power of this acting director as a director *de facto,* it appearing to be assumed that if he was not a director *de jure,* he was altogether without power as a director at all. This view is opposed to the rule declared in this state in *San Jose Savings Bank* v. *Sierra etc. Co.,* 63 Cal. 179, where it was held that a director who had ceased to be a stockholder continued to be a director *de facto* until ousted in a direct proceeding. (See, also, *Balfour-Guthrie Co.* v. *Woodworth,* 124 Cal. 169, 173, [56 Pac. 891]; *Mining Co.* v. *Anglo-California Bank,* 104 U. S. 192.) We are of the opinion that the call for the special meeting must be held, upon the findings, to have been valid, and the meeting held in pursuance thereof to have been a legal meeting.

The judgment is affirmed.

Shaw, J., Sloss, J., Lorigan, J., Henshaw, J., and Melvin, J., concurred.