Joseph A. Hawkins, J.
Argument on the motions herein was heard on November 18, 1969, and final submission by all parties was made on November 24, 1969.
Distilling the extensive ¡submissions herein, aided by dral argument and a ‘ ‘ guide to papers ’ ’ prepared by counsel, there are essentially three applications presently pending before the court: (1) by Permagon Press, Inc. (Inc.) and James B. Ross (Ross) for an order to direct the holding of a special meeting of Inc.’s ¡shareholders; (2) to enjoin Boss from calling or holding such meeting; and (3) to inspect Inc.’s books and records, sought by Permagon Press Ltd. (Ltd.).
Central to the issues are the efforts by Leasco Data Processing Equipment Corp. (Leasco) which has a 38% stock interest in Ltd.— and which latter entity has a majority stock position in Inc.— to acquire effective control of Inc., a domestic corporation. Ltd. desires to remove the present command of Inc., contending that one, Robert B. Maxwell’s domination of *480 its management caused intervention by the Board of Trade and City Panel on Takeovers and Mergers of the City of London. A new board of directors of Ltd. came into being, consisting of two nominees of Leasco and two representing public stockholders. Ltd. contends that the Maxwell interests continue to dominate Inc., allegedly to the detriment of both entities, and that the special call is needed to elect a more suitable board of directors for Inc.
Respecting the second above motion, it was originally initiated by an order to show cause seeking to enjoin Ross from calling a special meeting of Inc.’s shareholders. Subsequently, by stipulation, it was agreed by the parties that no such meeting would be held pending determination of the validity of the several calls by Ross for such meeting. Thereafter, the “ plaintiff-respondent ”, citing CPLR 103 (subd. [c]) as authority, served an “ amended complaint” seeking to convert the proceeding into an action.
The court having acquired jurisdiction of the parties, we do not deem it crucial to determine whether what is before the court is an article 78 proceeding or an action. Additionally, counsel for the respondents are not averse to summary disposition for it would obviate considerable delay. In any event, the issue to be decided remains unimpaired and unaffected whatever classification is accorded.
Ross, asserting authority as a vice-president and a director of Inc., issued the initial call for a special meeting on October 23,1969 — the first of four such calls. Prior thereto, he appears to have undertaken negotiations with C. V. Mosby Co., a publishing competitor of Inc., for an “executive position ”, and on October 13, 1969, accepted such employment by letter to his new employer. In said communication he stated that he “ expected to be able to start in this position on November 15, 1969.” Ross communicated this development to several executives of Inc., but for reasons not immediately germane intended to tender his resignation to Mr. Robert Maxwell and not to Leasco. In any event, Maxwell avers that on October 17, 1969, he was telephoned by Ross and advised of the latter’s resignation. The corporate waters thereafter become rather muddled and muddied. Suffice it to state that Ross, irrespective of which competing interest or faction so prompted, on October 23, 1969, asserting the requisite authority under the by-laws, issued a call for the special meeting.
Prior to June of 1969, it appears that Inc.’s by-laws provided that a special stockholders meeting could be called at the written request of a majority of the stockholders. During that *481 month, however, the by-laws were amended so as to provide in lieu thereof: ‘ ‘ Special meetings of the shareholders, for any purpose or purposes, may be called at any time, by the President, any Vice-President, the Treasurer or the Secretary or by resolution of the Board of Directors.”
The due enactment and validity of the aforesaid amendment to Inc. ’s by-laws is not questioned by Ltd.
Ltd., it is stated, now owns 70% of the stock of Inc. Understandably, it seeks to obtain control by replacing the present directors of Inc. by its own nominees. The fundamental issues are phrased tersely by Ltd.: Did Boss possess the requisite de facto authority to call a shareholders ’ meeting; and, irrespective of such authority, may Ltd., under Inc.’s by-laws, call such meeting?
It is further argued that Boss had de facto status as such officer, if not de jure. Whatever the real and significant distinctions between a de facto and de jure corporate officer, they are presently irrelevant for at bar there are no problems of Inc. being bound by the acts of an officer, real or putative, vis-a-vis third parties or creditors.
Much stress is laid upon Moon v. Moon Motor Car Co. (17 Del. Ch. 176, 179) as authority for a de facto officer issuing a valid call. There the requisite request under the by-laws has been made by a majority of the stockholders. He was essentially performing a ministerial function. After noting the appointment of that vice-president by the president and although the latter had no power so to do, said appointment had been assented to by the board of directors, that court held: ‘ ‘ Under these circumstances his call for the meeting, in the absence of the president and the refusal of the secretary was proper. A call for a meeting issued by a de facto officer is a valid call, provided of course it would be if the officer were a de jure one. Sherwood v. Wallin, 154 Cal. 735, 99 P. 191; Commonwealth v. Smith, 45 Pa. 59; Smith v. Erb, 4 Gill (Md.) 437; 2 Machen, Modern Law of Corporations, p. 2719.”
Republic Corp. v. Carter (22 A D 2d 29, affd. 15 N Y 2d 661) is cited as authority for validating retroactively Boss’ initial call. There the by-laws provided that both the president and board of directors had the right to call a special meeting. It was conceded that the then president had such right. The question presented was the superior power of the board of directors to cancel such meeting. The court held to the contrary and noted further that the board could not invalidate such call by discharging the president. At bar, the dual infirmities attach to the initial call: Boss’ status and the list of stockholders used.
*482 What, indeed, was Boss’ status in Inc. when he issued the calif In his affidavits, he concedes entering into negotiations with one, Leonard Batterson, vice-president of C. V. Mosby, a publishing company located in St. Louis, early in August of 1969; ■that on September 15, anticipating a change of management in Inc., he would “ consider seriously the position he had been offered; ” on October 11 and 12, he met with Batterson; and on October 17, he met with ‘ ‘ top management of Inc. ’ ’ and informed them that he was leaving Inc. “ no later than November 17.” There then followed telephone conversations with Maxwell and Boss’ reconsideration of his resignations. Boss’ affidavit refers to a letter, dated October 27, 1969, to Maxwell advising that he had decided to stay with Permagon Press. Whether or not effective to restore Boss to his former office, it post-dates the first call. The attendant vagaries and indecisions suggest that Boss, independently or otherwise, came to the realization that he had severed his tie too precipitously.
Boss’ indecision and corporate peregrination unwittingly may well have frozen the existing composition of Inc.’s present board of directors and the takeover deferred until the next annual meeting unless a valid call can sooner be made.
It is contended that whether Ross is to be denominated a de facto or a de jure vice-president of Inc. on the occasion of either the initial or subsequent calls for the special meeting is of no moment for the stockholders to whom notices were sent were derived from an old and, hence, invalid list. Absent any specific provisions to the contrary in Inc.’s by-laws, section 604 (subd. [b], par. [1]) of the Business Corporation Law requires that the shareholders of record entitled to notice be those as of the ‘ ‘ close of business on the day next preceding the day on which notice is given ”. Concededly this was not observed.
Disregarding for the moment the validity of the list used, may Boss be considered to have been a de facto officer? We deem the argument of Inc. in this connection well taken in that the distinctions between a de facto and de jure officer are significant only where the rights of third parties or creditors are involved or prejudiced by the actions of such disputed corporate officer. Nor is there any legal doctrine which sanctions investing Boss with such de facto status as to cure retroactively the disabilities of both status and list. We find no persuasive authority authorizing a new call which essentially would revive the first call, mmc pro time. As for prospective resurrection, the new by-laws adopted on October 30, 1969 — and presumptively valid — bar Boss, or his successor, from promulgating another call for such *483 authority is now limited to the president or the board of directors.
Lazar v. Knolls Co-op. Section No. 2 (205 Misc. 748) is stressed by Ltd. Considering the special nature of the corporation involved — a “ co-operative corporation ” organized under the Cooperative Corporations Law — that holding simply read former article 6 of the General Corporation Law into section 63 of the Cooperative Corporations Law, the former’s provision for calling an overdue annual meeting, noting particularly, that there the directors who had never been elected, were perpetuating themselves in office by failing to hold the first annual meeting. The stockholders were consequently deprived of their right to elect a board of their own selection.
Accordingly, the application by Inc. and Ross to direct the holding of a special meeting of the stockholders of Inc. is denied and the application to enjoin Ross from holding such meeting is granted.
We now consider Ltd.’s application for an order permitting the inspection of Inc.’s books and records. In rejoinder, Inc. charges that such relief is not sought in good faith, Leasco being a competitor; further, that it is in violation of an agreement made in England, and is sought for use in connection with another action by Leasco against Maxwell, et al., pending in the U. S. District Court, Southern District of New York. The submissions pose a substantial issue of Ltd.’s good faith which is not resolved by its suggestion that the order be fashioned so as to assure that any information so obtained 11 will be used, not by Leasco, but by Limited.”
The holding in Matter of Ochs v. Washington Hgts. Fed. Sav. & Loan Assn. (17 N Y 2d 82, 90) applies: “ Once the motivation of a petitioner is properly questioned, a hearing must be had to determine the factual issues presented.”
Accordingly, the motion and cross motion relating to such inspection are referred to Special Term, Part III, for the requisite hearing. Due notification is to be given to the Clerk of said part so the date can be fixed for such hearing at the disposition of the Justice there presiding.