STANLEY MOON and PHILLIP P. GLICK,

*vs.*

MOON MOTOR CAR COMPANY, a corporaion organized and existing under the laws of the State of Delaware, W. J. MULLER, J. E. ROBERTS, FREDERIC E. WELCH, S. MAYNER WALLACE, SAMUEL H. LIBERMAN, (Miss) V. L. KADELL, L. J. PORTNER, (Miss) A. FRANEY, HELM WALKER and R. P. KOLWITZ, C. W. BURST, W. D. HEMENWAY, STANLEY MOON and H. W. KLEMME.

*New Castle, June 17, 1930.*

*Charles C. Keedy*, and *Edward H. Kelly*, of New York City, for petitioners.

*Albert L. Simon*, for Moon Motor Car Company, C. W. Burst, W. D. Hemenway, Stanley Moon, and H. W. Klemme.

*Caleb S. Layton*, of the firm of Richards, Layton & Finger, and *Herman Shulman*, of New York City, for Moon Motor Car Co., W. J. Muller, J. E. Roberts, Frederic E. Welsh, S. Mayner Wallace, Samuel H. Lieberman, V. L. Kadell, L. J. Portner, A. Franey, Helm Walker, and R. P. Kolwitz.

*S. Mayner Wallace*, of St. Louis, Mo., *in propria personam.*

THE CHANCELLOR. In view of the fact that the next annual meeting of the stockholders of this corporation will be held in due course under the by-laws in a little over three weeks from now, the solicitors for the Andrews group suggested that the court should stay further consideration of this petition until the passing of the annual meeting. This might be advisable were it not for the fact that the important question of how many directors must be elected at that meeting, whether seven or fifteen, ought to be settled, to the end that the stockholders might be advised, in so far as this court's order can advise them, concerning the

number of directors to be elected. Notwithstanding, therefore, that a matter of only three weeks of tenure in office is involved, it would appear that the petition should now be disposed of.

1. The first point of objection is that the special meeting of stockholders was not called by the person authorized by the by-laws to call a special meeting of stockholders. The by-laws provide that special meetings of stockholders may be called by the president and "shall be called by the president or secretary at the request in writing * * * by stockholders owning a majority in amount of the common capital stock of the corporation issued and outstanding." An owner of a majority of the issued and outstanding common stock prepared a written request for a special meeting. The request was not presented to the president, Mr. Burst, because he was absent from St. Louis, where the company's principal place of business is located. He was somewhere in New York City. The request was presented to the secretary, Mr. Moon, who refused to call the meeting. It was then presented to one of the vice-presidents, Mr. Hemenway, who refused. It was then presented to another vice-president, Mr. Walker, who honored it by favorable action. It is objected that Mr. Walker was not a vice-president. The testimony however shows that though his election as vice-president was somewhat irregular, yet he acted in the office and was so acting at the time he issued the call. He had been appointed vice-president by the president, who had no power to appoint a vice-president. The appointment however was made at a board meeting and the directors assented to it, and Mr. Walker in fact assumed the office, performing the duties incident to it. Under these circumstances his call for the meeting, in the absence of the president and the refusal of the secretary was proper. A call for a meeting issued by a *de facto* officer is a valid call, provided of course it would be if the officer were a *de jure* one. *Sherwood v. Wallin*, 154 *Cal.* 735, 99 *P.* 191; *Commonwealth v. Smith*, 45 *Pa.* 59; *Smith v. Erb*, 4 *Gill* (*Md.*) 437; 2 *Machen, Modern Law of Corporations*, *p.* 2719.

2. It is next urged that notice of the meeting was not given to the stockholders entitled to vote at such meeting for the election of directors. The meeting was held on April 7th and the

persons who were allowed to vote were those whose names appeared on lists prepared by the company's transfer agent as stockholders of record on March 25, 1930.

*Section* 17 of the *General Corporation Law* as amended provides, as follows:

"Unless otherwise provided in the Certificate of Incorporation or an amendment thereto, or in the resolutions providing for the issue of any stock adopted by the Board of Directors as in this Chapter provided each stockholder, shall at every meeting of the stockholders be entitled to one vote in person or by proxy for each share of the capital stock held by such stockholder, but no proxy shall be voted on after three years from its date, unless said proxy provides for a longer period, and, except where the transfer books of the corporation shall have been closed or a date shall have been fixed as a record date for the determination of its stockholders entitled to vote, as hereinafter provided, no share of stock shall be voted on at any election for directors which shall have been transferred on the books of the corporation within twenty days next preceding such election of directors.

"The Board of Directors shall have power to close the stock transfer books of the corporation for a period not exceeding forty days preceding the date of any meeting of stockholders or the date for payment of any dividend or the date for the allotment of rights or the date when any change or conversion or exchange of capital stock shall go into effect; provided, however, that in lieu of closing the stock transfer books as aforesaid, the by-laws may fix or authorize the Board of Directors to fix in advance a date, not exceeding forty days preceding the date of any meeting of stockholders or the date for the payment of any dividend, or the date for the allotment of rights, or the date when any change or conversion or exchange of capital stock shall go into effect, as a record date for the determination of the stockholders entitled to notice of, and to vote at, any such meeting, or entitled to receive payment of any such dividend, or to any such allotment of rights, or to exercise the rights in respect of any such change, conversion or exchange of capital stock, and in such case only such stockholders as shall be stockholders of record on the date so fixed shall be entitled to such notice of, and to vote at, such meeting, or to receive payment of such dividend, or to receive such allotment of rights, or to exercise such rights, as the case may be, notwithstanding any transfer of any stock on the books of the corporation after any such record date fixed as aforesaid."

In this case, the directors did not exercise the power to close the transfer books; neither did the by-laws fix or authorize the directors to fix a date in advance as a record date for determination of the stockholders entitled to notice of the meeting and to

vote. The general rule of the section's first paragraph, therefore, governs.

Condensed to fit the facts of this case, the controlling paragraph would read as follows:

"Such stockholder shall at every meeting of the stockholders be entitled to one vote in person or by proxy for each share of the capital stock held by such stockholder * * * and * * * no share of stock shall be voted on at any election for directors which shall have been transferred on the books of the corporation within twenty days next preceding such election of directors."

Now twenty days before the election would carry back to March 17th. The stock lists of March 25th therefore showed stockholders of record not twenty but twelve days before the meeting. It is argued that the lists used must have contained names of persons who had become stockholders in the interval between March 17th and March 25th. If so, such persons, it is contended, had no right to vote; and at the same time it is argued that the transferrors of such persons did have the right to vote but would never have received the notice because of the fact that their names would of course not appear on the March 25th list. This argument is based on the conception that stock "transferred" within the meaning of *Section* 17 means stock transferred to but not from a person. In other words, it means that a transferee, a present stockholder who had become such between March 25th and April 7th could not vote; but his transferror, who had ceased to be a stockholder, could vote. The argument would thus treat the phrase "stock * * * transferred" as having a dual meaning that turns upon the character of the person desiring to vote it—upon a transferror on the one hand and its complement of transferee on the other, and would apply the disqualification to the latter but not to the former. If it be legitimate to give to transferred stock a selective interpretative meaning under the section, as this argument seems to do, that is to say if it be proper to make it preserve the voting rights of a transferror but deny the voting rights of the transferee, the result would be hardly equitable, for certainly if there be room for interpretation to favor one as against the other, the transferee who is one of the present equitable owners of the corporation should receive the more favorable consideration. If within the meaning of the section the

stock can vote, the person to whom it was transferred has a claim far superior to the one who disposed of it. My opinion is that the transferred stock itself is temporarily disqualified, and can be voted by neither the transferror nor the transferee. The disqualification which the section imposes is not phrased in terms of persons. It is specifically directed against the voting rights of stock. Its language is, "no share of stock shall be voted on, etc." This appears to me to be a plain disqualification of stock. The transferred shares can be voted by no one. This result to be sure may work an injustice in certain cases. So also may the scheme of the section in its second paragraph, where provision is made for closing the books or fixing a record date for voting purposes, work an injustice in some situations. The section, however, appears to recognize the desirability of some practical rule of convenience which considerations having to do with exceptional situations are not deemed sufficiently persuasive to overcome.

In view of the foregoing, therefore, persons who had transferred their stock after March 17th, were not entitled to vote and hence were not entitled to notice of the meeting.

In the instant case it should be said that the owner of the majority of the stock acquired his shares well in advance of the twenty day period.

3. In the third place it is objected that sufficient prior notice of the meeting was not given. Notice went out on April 2nd, which was five days before the meeting. The Andrews faction contends that five days' notice was all that was required under the by-laws. The Burst faction contends that ten days' notice was required by the by-laws. The question under this head is—what did the by-laws require?

The original by-laws required five days' notice of special meetings. A copy of the by-laws with the five day notice provision was given to the Andrews associates prior to their investing five hundred thousand dollars in cash in the stock of the defendant company. This was in response to their request for information as to the by-laws. When the Andrews associates had put their money into the corporation, they became convinced, rightly or wrongly, that the Burst faction who were

continuing in control of the corporation, were engaging in improper conduct. The Andrews group then took steps to call the special meeting of the stockholders in question, in order to amend the by-laws by increasing the board to fifteen and forthwith to elect eight new directors. They proceeded to act under the by-laws as the same had been represented to them to be.

At the meeting, the Andrews stock learned for the first time that the by-laws were claimed to have been amended so as to require ten days' notice to stockholders of a special meeting. This claim is now asserted by the Burst faction. The interesting question is presented of whether or not the Burst group, who are said to be the real parties contending with the Andrews group in this litigation, are not estopped from asserting the by-laws to be other than they represented them to be to the persons whom they induced to invest five hundred thousand dollars in the corporation and thereby become its majority owners.

As interesting as this question is, I find it unnecessary to pass upon it for the reason that the claimed amendment to the by-laws which changed the five days notice requirement to a ten day one appears not to have been properly adopted. The by-laws gave the directors power to amend them, but only at regular meetings of the board, which were to be held on the fifteenth day of each month. The amendment in question was adopted at a meeting other than the regular one and two members were absent. The amendment was therefore not adopted in accordance with the by-law provision.

Hence the objection based on insufficiency of notice must fall.

There is one thought in connection with this matter of notice that at first blush would seem to present some difficulty. It arises by reason of *Section* 29 of the *General Corporation Act*, as amended by 36 *Del. Laws*, *c.* 135, § 15, by the terms of which it is provided that the officer having charge of the stock ledger shall make at least ten days before "every election of directors" a complete list of the stockholders entitled to vote at said election, and that such list shall be open at the place of election for ten days for examination by any stockholder. Of course where as in this case a special meeting is called on five days' notice, it

is impossible to comply with the ten day posting period required by the statute. And so the question arises whether a by-law providing for a special meeting of stockholders on five days' notice to elect directors, can be lawfully adopted. In the short time I have been able to give to consideration of this question, my opinion is that such a by-law may be adopted notwithstanding *Section* 29. I say this for the reason, principally, that provisions such as are found in *Section* 29 appear to be directory only and failure to comply with them will not of itself avoid the election. It was so held in a case where a New Jersey statute very similar to ours was before the Supreme Court of that State for construction. *Downing, et al., v. Potts, et al.*, 23 *N. J. Law*, 66.

It is next contended that a by-law providing for only five days' notice of a special meeting of stockholders is so unreasonable as to be void in the eyes of the law. No case has been cited in support of this contention, and as presently advised I cannot accept it. It is entirely conceivable that circumstances may arise in the course of a corporation's life that are of so emergent a nature that stockholders should be convened on short notice in order that they might take action to assert and protect their interests and a by-law so providing would be founded in salutary policy. Indeed if the contentions of the Andrews group as to the conduct of the Burst group of officers and directors are correct, just such an emergent situation was presented in this case; and a speedy meeting of stockholders was the only effective method possible, not I will say to undo what the incumbent officials had already done, but to forestall other possible encroachments upon the stockholders' interests which the past conduct of the incumbents made it reasonable to apprehend. Five days is of course a short notice when we reflect that in modern corporations stockholders are scattered far and wide. The same can be said also with respect to ten or even twenty days, which lengths of time are frequently used. There are bound to be some stockholders who in many instances could not attend on even thirty days' notice. In the instant case the by-laws provided for a five day notice of special meetings, and I am not disposed to hold the by-law unreasonable in the light of the rather brief consideration which I have been able to give to the matter. If

I am in error in this view, I am consoled by the belief that the error is committed in a case where the ultimate results are not unjustly affected thereby.

5. The last question is that, granting the legality of the amendment providing for eight additional directors, yet an election of persons to fill the new places could be held only at the regular annual meeting of stockholders provided by the by-laws to be held on the first Tuesday after the first Monday of July in each year. This contention is based on *Section* 30 of the statute (as amended by 35 *Del. Laws, c.* 85, § 14) which in part is as follows:

" * * * And thereafter the said directors shall be elected at the time and place within or without this State named in the by-laws, and which shall not be changed within sixty days next before the day on which the election is to be held. A notice of any change shall be given to each stock-holder twenty days before the election is held, in person or by letter mailed to his last known postoffice address.

"Vacancies shall be filled by a majority of the remaining directors, though less than a quorum, unless it is otherwise provided in the Certificate of Incorporation or the by-laws and the directors so chosen shall hold office until the next annual election and until their successors shall be duly elected and qualified, unless sooner displaced. * '* * "

It is conceded that newly created offices of directors present no question of "vacancies" and hence are not to be filled under the vacancy provision of the section. The places are therefore to be filled by election by the stockholders. Must the stock-holders await the arrival of an annual meeting before they can exercise their rights to elect persons to such newly created offices? I think not. To hold otherwise would be highly unreasonable. If the corporation, in the judgment of its majority owners ought to have a larger board of directors either because the demands of wise management require it or the maladministration of a majority of the existing board call for it, it would be a strange situation if the majority of the real owners of the corporation were to be compelled to await the passage of perhaps as much as nearly a year of time before it becomes possible for them to put into practice that which their judgment approves. *Section* 30 does not in express terms indicate to the contrary; nor does the

implication of its purpose so suggest. *Section* 30 in its provisions defining the time of elections undertakes to specify the time for electing directors as successors to incumbent ones in the regular order as prescribed by the by-laws. There can be no reason in requiring that new places which never existed before, should remain unfilled for as much possibly as a year. With respect to such places power to fill them resides inherently in the stockholders and it may be exercised forthwith. *Gold Bluff Mining & Lumber Corp. v. Whitlock,* 75 *Conn.* 669, 55 *A.* 175; *In re A. A. Griffing Iron Co.,* 63 *N. J. Law,* 168, 41 *A.* 931. The statute in *Section* 9, as amended by 36 *Del. Laws, c.* 135, § 4, provides that "the number of directors which shall constitute the whole board shall be such as from time to time shall be fixed by, or in the manner provided in, the by-laws." The by-laws in this case were subject to amendment by the stockholders and consequently the stockholders could from "time to time," by amending the by-laws, fix the number of directors. But, if the contention of the Burst faction be sound, "time to time" for all practical purposes would have to be made to read, at "any annual meeting of stockholders." *Section* 9 with its wide scope of discretion in the matter of time must be reconciled with *Section* 30 with its restriction as to time. Such reconciliation can be had by confining *Section* 30 in its time aspects to the regularly recurring election which takes place at the stated annual meeting.

It is further contended that to allow the stockholders to elect the additional new directors at other than the annual meeting would be to allow them in substance to change the annual meeting date which under *Section* 30 cannot be done except on twenty days' notice and then not within sixty days next before the day of the meeting. This contention is grounded on the erroneous view that the special election in question is to be regarded as one that falls within the contemplation of *Section* 30, a view which I have just rejected. The stockholders by enlarging the board and immediately completing its membership did not undertake to change the standing time for the election of directors fixed by the by-laws. The regular time and place fixed by the by-laws remain as heretofore.

From the foregoing it follows that the Andrews group of

directors are lawful members of the board. No question has been made concerning the title of the officers representing the Andrews group to the respective offices held by them except such as traces itself back to the Andrews group of directors.

A decree will therefore be entered establishing the title of the Andrews group of directors and officers.