THOMAS H. McWHIRTER, FRANK A. JACOBI, ALBERT J. BROWN, OTTO G. SMITH, STEWART LYNCH, SAMUEL J. BOYD, and others, individually and as attorneys-in-fact for stockholders of the Washington Royalties Company, a Delaware corporation,

*vs.*

WASHINGTON ROYALTIES COMPANY, a Delaware corporation, R. G. CRIDLAND, CYRUS S. AVERY, BENJAMIN MOSSMAN, FRANK V. THOMAS and GROVER C. LEDLIE.

*New Castle, Nov.* 10, 1930.

*Charles C. Keedy*, and *C. Stewart Lynch*, of Tulsa, Okla., for petitioning stockholders.

*Caleb S. Layton*, of the firm of Richards, Layton & Finger, for respondents.

THE CHANCELLOR. This is an application under *Section* 30 of the *General Corporation Act* (*Revised Code* 1915, § 1944 as amended by 35 *Del. Laws*, c. 85, § 14) which provides with respect to vacancies in the board of directors as follows:

"Vacancies shall be filled by a majority of the remaining directors, though less than a quorum, unless it is otherwise provided in the Certificate of Incorporation or the by-laws and the directors so chosen shall hold office until the next annual election and until their successors shall be duly elected and qualified, unless sooner displaced; provided, however, that, if the remaining directors shall constitute less than a majority of the whole Board, upon application of any stockholder or stockholders holding at least ten per cent. (10%) of the total number of shares of the capital stock of the corporation at the time outstanding having the right to vote for directors, the Chancellor may in his discretion, summarily order an election to be held to fill any such vacancy or vacancies or to replace the director or directors chosen by the remaining directors as aforesaid, which election shall be governed by the provisions of *Section* 31 of this Chapter in so far as such provisions are applicable. The person or persons elected pursuant to said order shall serve as a director or as directors until the next annual meeting of stockholders and until their successors shall have been duly elected and qualified, and shall displace any person or persons who may theretofore have been appointed by the remaining directors as aforesaid."

The facts are as follows. The annual meeting of stockholders at which directors are chosen is required by the by-laws to be held on February 1 of each year or, if that day be a holiday,

on the next succeeding day. The by-laws provided for a board of directors of five persons. The by-laws could be amended "by the affirmative vote of a majority of the stock issued and outstanding and entitled to vote thereat, at any regular or special meeting of the stockholders if notice of the proposed alteration or amendment be contained in the notice of the meeting, or by the affirmative vote of a majority of the board of directors if the alteration or amendment be proposed at a regular or special meeting of the board and adopted at a subsequent regular meeting."

At the annual stockholders' meeting held February 1, 1929, without previous notice having been given as required by the by-laws, the stockholders adopted a motion "that the board of directors be increased to the number of seven," and the meeting thereupon proceeded to elect seven directors. On the same day at the directors' meeting immediately following the stockholders' meeting, the directors adopted a resolution "that the motion of the stockholders in amending the by-laws to have seven directors instead of five be ratified." This resolution had not been proposed at a prior meeting of the board as the by-laws required in order to effectuate an amendment.

Thus the attempted amendment was not adopted by either the stockholders nor the directors in accordance with the by-law provision governing the subject.

The seven men elected as directors assumed to function as a board throughout the entire corporate year of 1929, adjourning their meetings on several occasions when only three were present because of a lack of a quorum, and never assuming to act unless four at least were present.

On February 1, 1930, the stockholders in their annual meeting, without protest from anyone, again elected seven persons to serve as directors, six of whom immediately thereafter met, elected officers for the company and adjourned to February 3rd.

Apparently for the first time it was then realized that the proceedings by which the board had been increased to seven in number were irregular, for on February 3rd, at the adjourned meeting of the board of directors, a resolution was proposed that *Section* 12 of the by-laws, which prescribed the number of directors,

be amended so as to read—"the property and business of this corporation shall be managed by its Board of Directors, seven in number, etc." At the next regular meeting of the board, which was held February 25, 1930, the amendment that had been proposed increasing the board to seven was unanimously adopted.

On February 25, 1930, therefore, the by-law amendment by which the board was made to consist of seven persons was properly adopted.

The seven directors who had been elected on February 1, 1930, continued to serve as such and so far as the record shows no one questioned their authority or the legality of their election until the answer was filed to the pending application on October 17, 1930.

At the regular meeting of the board held on May 8, 1930, four directors were present, including Charles C. Jennings. Jennings tendered his resignation to take effect at the close of the meeting, and R. G. Cridland was elected as his successor.

Thereafter, because of certain controversies, four other of the directors who had been chosen by the stockholders at their February 1, 1930, meeting resigned, leaving Vandall, Shipman and Cridland as the only remaining directors.

On September 30, 1930, the three remaining directors proceeded unanimously to elect four persons (Avery, Mossman, Thomas and Little), to fill the places vacated by the four resignations just referred to.

The petitioners contend that under the above state of facts vacancies have been filled in a board of seven by remaining directors, who, being three in number, were less than a majority of the whole board, and that the petitioners, holding more than ten per cent. of the outstanding voting stock, are entitled under *Section* 30 of the *General Corporation Law* to an order for an election to replace the directors so chosen.

The petitioners are two hundred and twenty-five in number out of a total of six hundred and twenty-one shareholders, and own 40,983 shares, or something over forty-three per cent. of the total outstanding shares of 94,277.

The defendants make three contentions in opposition to the petitioners' application.

The first one is, that the court has no jurisdiction to call the meeting of stockholders as prayed. This contention is based in part on the proposition that the two new offices created by the amendment of February 25, 1930, presented no situation of vacancies within the meaning of *Section* 30. The case of *Moon, et al., v. Moon Motor Car Co., ante p.* 176, 151 *A.* 298, is cited in support of the proposition that newly created offices of director are not at the instant of their creation vacant within the meaning of the section; that in this case, the two new offices having been created for the first time on February 25, 1930, the directors could not by their subsequent action lawfully fill the places, because the same were not vacant; and that with respect to these two places, there then being no vacancies which the remainder of the board could fill, the *sine qua non* of the stockholders' right to an order for an election and the court's power to order one is lacking.

This argument is predicated upon the proposition that the by-laws were not amended so as to increase the board to seven until February 25, 1930. The petitioners contest this position and insist that the action of the stockholders at their February, 1929, meeting when they resolved to increase the board to seven in number, together with their election of that number in that year; the action of the directors·in ratifying the action of the stockholders; the election of another board of seven by the stockholders at their February, 1930, meeting and the functioning of a board of seven throughout all of 1929 and down to the filing of the pending application—all without protest from any source —are enough in law to establish for this corporation a board of directors of seven as of the time of the stockholders' meeting of February 1, 1930, when seven directors were chosen. If this contention be sound, then the predicate upon which the respondents' present argument rests, viz., that new offices were created for the first time on February 25, 1930, is destroyed. Many cases are cited by the petitioners to support their position in this regard. I have not taken the time to examine them for the reason that my views with respect to other phases of the controversy are sufficient to warrant the granting of relief to the petitioners without regard to the merits of this one. I shall

assume, then, that the two new offices were not lawfully created until February, 25, 1930.

But, if that be so, does it follow that the court has no power to grant the application? The situation would be that on February 1, 1930, the stockholders elected seven persons to be director-members of a board of· five. It is admitted that where more directors are elected than there are places to fill, all are *de facto* officers. *Machen on Corporations*, §§ 1430, 1477; 14A C. J. p. 80, § 1840; 3 *Fletcher, Cyclopedia of Corporations*, § 1837. This rule is applicable to private corporations and is an exception to the general one which is to the effect that there can be no *de facto* officer where, for want of an office, there can be no *de jure* one. While however there were, prior to February 25, 1930, directors of this corporation to the number of two with no corresponding offices in existence, yet on that date the by-laws· are admitted to have been properly amended so as to create the two new offices of directors. If the seven persons had prior to that date been *de facto* directors of a board of five, no less were they thereafter *de facto* directors of the enlarged board of seven. They had in fact been elected on the assumption that such was indeed the lawful number to be chosen. They took office and always acted on the assumption that the board was comprised of seven.

It requires a refinement of reason that runs out in its conclusion at too great variance with what appears to me to be the sensible view of the matter, to say that while seven men were *de facto* incumbents of five places, they were not, when two additional places were added, likewise *de facto* incumbents of seven, to which stockholders had assumed, though erroneously, they were electing them.

I conclude then that notwithstanding all the directorates were not in existence when the stockholders elected seven men to be directors, yet as soon as the board was enlarged to seven on February 25, 1930, each of the seven directors in office was as before a *de facto* director, and there was then, as not theretofore, an office to match, so to speak, each of the seven incumbents.

*Section* 30 deals with "vacancies" in the office of directors. A vacancy implies a previous incumbency. The outstanding and distinguishing feature of a *de facto* officer is that he is in fact

occupying the office under color of right and performing its duties. When he quits the office, it necessarily follows that something was occupied and has now become vacant.

There were therefore four vacancies in the board when the four directors resigned during the summer of 1930.

*Section* 30 in dealing with vacancies in the board, does not make any attempt to distinguish between vacancies caused by the retirement of *de jure* directors on the one hand and *de facto* directors on the other. The substantial thing which the section contemplates is this, that when there has been a reduction in the governing body below a quorum and the remanding minority undertakes to fill the board to its full complement, the stockholders, if ten per cent. request it, shall have a right to request that they be convened in meeting and afforded the opportunity of saying whether they desire the persons so chosen by a minority of their own agents to continue as the dominant managers of their corporate affairs.

These seven *de facto* directors were chosen by the stockholders as a board of directors. They functioned as such. They occupied the offices. Four have since then vacated the offices. The fact that the four were only *de facto* officers does not alter the fact that their retirement left four places vacant which had been filled.

The vacancies referred to by the section are vacancies created by former incumbents, whether they were in office *de jure* or *de facto*. If the stockholders and directors, the former by electing the seven directors and the latter by choosing successors for those of them that resigned, all recognized the seven as incumbent officers, it would seem, now that the board has been enlarged so as to equal the number originally elected and since undertaken to be kept in office, that this court ought to accept the situation as all the parties in interest have by their acts and conduct recognized it to be. That situation is that the lawful board ever since February 25, 1930, has been a board of seven, that all the places on the board were actually filled, and that four such places became vacated and were filled by the remaining minority. That being the case, the petitioners, holding over

ten per cent. of the outstanding voting stock, have the right to seek the relief prayed for.

The second contention raised by the respondents is, I think, substantially answered by the views which I have hereinbefore expressed, for it rests on the conception that the two new offices created by the by-laws amendment of February 25, 1930, were never filled. If the two new offices were never filled by the stockholders at the premature election, they must remain unfilled until the next annual meeting, because, being new offices and not vacancies in old ones, the remaining directors could not fill them. This is the view of the respondents. A complication here arises. There was an old board of five; seven were in office; then the board was enlarged to seven; then four resigned, leaving three in office; that made, say the respondents, two vacancies proper in old offices and two unfilled places in new ones; the remaining directors, if a quorum, can fill vacancies without any right of review in the stockholders; the stockholders have a right of review only in case the directors who fill "vacancies shall constitute less than a majority of the whole board;" now, in this case, say the respondents, the "whole board" must mean a board made up of the old members of five, notwithstanding the whole board is now a board of seven; and so the three who were left in office, while less than a majority of seven, were a majority of five, and therefore their action in choosing persons to fill the two vacancies in old offices, being as it was the majority of the "whole board," is not open to review by the stockholders. This argument is based on the conception that the "whole board" must be taken to be the board as it formerly was and not as it now is. I can see no justification for so construing the phrase. I see nothing on which to hinge such construction. It appears to me to rest on mere affirmation and to be without any reason to support it. Where do we come out with this argument? Why, here, viz., that the three directors left in office had power to fill two existing vacancies but no power to fill the two new places; their action in undertaking to fill the new places was void; their valid action in filling two vacancies is not reviewable by the stockholders; and so there is no case presented which entitles the petitioners to an order for a stockholders' meeting. This argu-

ment is quite technical and turning as it does on two erroneous points of view, viz., (a) that the two new offices were never filled, and (b) that the "whole board" means the board not as it existed on September 30, 1930, but as it existed prior to February 25, 1930, cannot be accepted. The respondents recognize that if their contention in this regard be accepted, a confused situation will exist, and they suggest ways of curing it which are dependent for their adoption upon the voluntary action of the seven who are in office and who, by declining to act, will continue to conduct the business of the corporation. Thus four men who never were elected by the stockholders but by a minority of their originally chosen agents will, until the next annual meeting, have it in their power to dominate the corporate affairs, and the obvious intent of *Section* 30 to give the stockholders an opportunity to correct such a situation will be frustrated.

The third contention is that the application is addressed to the discretion of the Chancellor and no showing is made which justifies the exercise of that discretion in favor of the application.

It is apparent from the pleadings that there are two contending factions in this corporation, and a decided conflict of views between them. As much as forty-three per cent. of the outstanding stock is asking that the stockholders be convened so that it might be ascertained whether they desire four out of seven of the board of directors to continue in office. The applicants themselves number nearly a majority of all the outstanding stock. Where such a large percentage makes the request, that in itself is enough, in the absence of some strong showing *contra*, to prompt me to exercise my discretion in a favorable way, where as here the annual meeting is three months distant. I declined at the hearing to receive certain testimony from the applicants which they tendered in order to address an appeal to the Chancellor's discretion. A request from forty-three per cent. of the stock impressed me as enough of a *prima facie* showing without the supplement of additional circumstances. Hence I refused to take the time to hear the additional testimony which was offered by the applicants. My thought was that under the circumstances, the mere request from forty-three per cent. of the stock was sufficient to move the judicial discretion in favor of the

application, and nothing more need be heard as bearing on the question of discretion unless something developed on the side of the respondents that would tend to overcome the *prima facie* case which the applicants had made out.

The respondents offered testimony for the purpose of rebutting the showing which the applicants had made upon the question of discretion. This testimony was of a character designed to show that the four persons chosen to fill the vacant places were competent to act as directors and were men of business experience and integrity. I declined to hear such testimony. No objection was raised against the competency, or business experience and integrity of the four gentlemen in question. I assumed and do now assume that they are not open to attack on that score.

Stockholders are entitled to choose from among any number of men of equal and proved fitness whom they will have to manage their affairs. The fact that men elected to vacancies which constitute a majority of the whole number of the board are fit and competent, ought not to prevent the stockholders from meeting to decide whether they want those men or others of equal fitness and competency to act as their representatives.

I do not conceive that the Chancellor's discretion in such matters as this ought to be governed by his own notions of whom it would be best for the stockholders to choose as directors. It is for the stockholders to say. When forty-three per cent. of them ask for a meeting of all in order to see if the vacancies have been filled satisfactorily to a majority, I do not think that the court should deny the request simply because the court might think that the choices already made by the remaining minority directors were of competent and fit persons.

One other matter needs to be disposed of. The applicants seek to have the stockholders elect not only four persons to fill the vacancies created by the four resignations that have frequently been hereinbefore referred to, but as well a fifth vacancy. This fifth vacancy was created by the resignation on May 8, 1930, of Charles E. Jennings. R. G. Cridland was, on that date, elected as his successor. I do not see on what theory the applicants are entitled to have the stockholders pass upon whether Cridland

should be replaced. Whether, at the time of Cridland's election, the "remaining" board be regarded as consisting of five or of seven, a majority chose him. Not having been chosen by a minority, *Section* 30 gives no right to the stockholders to replace him.

Order in accordance with the foregoing.