**Howard A. GROSSMAN et al., Plaintiffs,**

v.

**LIBERTY LEASING CO., INC., a Delaware corporation, et al., Defendants.**

Court of Chancery of Delaware, New Castle.

May 11, 1972.

**750**

H. Albert Young, H. James Conaway, Jr., Edward B. Maxwell, 2d, Jack B. Jacobs, of Young, Conaway, Stargatt & Taylor, Wilmington, and Bernard J. Nussbaum, of Sonnenschein, Levinson, Carlin, Nath & Rosenthal, Chicago, Ill., for plaintiffs.

E. Norman Veasey, David T. Dana, III, Allen M. Terrell, Jr., of Richards, Layton & Finger, Wilmington, and Howard Arvey and John J. Enright, of Arvey, Hodes & Mantynband, Chicago, Ill., for defendants.

DUFFY, Chancellor:

This action involves a struggle for control of Liberty Leasing Co., Inc., a Delaware corporation (Liberty). The motions and arguments are many but, in the view I take of the present status of affairs, it is necessary to consider only the Court's jurisdiction under 8 Del.C. § 225 and plaintiffs' motion for a preliminary injunction.

### A.

Plaintiffs, together with members of their immediate families, own approximately twenty percent of Liberty's outstanding common stock. Liberty is a Chicago-based, diversified company with four operating divisions and public stockholders. Howard A. Grossman and Maurice Gross have been directors of Liberty for about ten years; until March 3, 1972 Grossman was Liberty's president and treasurer, Gross was its executive vice president and secretary.

Defendants Lowell E. Sachnoff and James H. Myers have been directors of Liberty for a number of years. Defendants Robert A. Malkin, Duane V. Haas and E. Earl Roland have acted as directors since about January 17, 1972. They also serve as officers of the corporation. Defendants Edward Peachin and Bruno Dalmazzo were appointed as officers of the corporation on March 3, 1972.

At all pertinent times Liberty's by-laws called for five directors. Between April 14, 1970 and December 29, 1971 there were only four directors: Grossman, Gross, Sachnoff and Myers. There had been a fifth director before July 9, 1969. Management recom-

mended to the stockholders that only four directors be elected at the annual meetings held in 1970 and 1971 and that was done. In the fall of 1971 the four directors discussed the possibility of adding a fifth. They were unable to agree on a single nominee but, after much discussion, they unanimously agreed on December 29, to amend the by-laws to increase the board from five to seven members; they then elected Malkin, Haas and Roland to fill the "current vacancy" and the "two new positions created by the amendment of the By-Laws."

Plaintiffs allege that the following day, before the new directors were notified of their election, both Grossman and Gross wanted to rescind the action but Sachnoff, who is an attorney and who had represented them in certain matters, advised that this could not be done. They charge Sachnoff with fraud as to this and certain related matters but, at oral argument, plaintiffs said that they do not rely on fraud as a basis for a preliminary injunction. Sachnoff denies all allegations of fraud.

On January 17 Malkin, Haas and Roland, respectively, accepted appointment as a director.

Plaintiffs say that at a board meeting on February 21 all directors other than Grossman and Gross voted to commence immediate liquidation of the Equipment Leasing Division of the company. Removal of Grossman and Gross from the corporation's top management was also considered but that proposal was continued to March 3; at a board meeting on that date Malkin, Haas, Roland and Sachnoff voted to oust Grossman and Gross. Malkin was then elected president, Roland was made executive vice-president and secretary, Haas became chairman of the board, and the other individual defendants were each elected to a vice-presidency.

Thus, division at the top was struck; both factions are now actively soliciting proxies for their respective and competing slates of directors to be submitted to the annual meeting of stockholders scheduled for May 23

Plaintiffs seek a declaration that the election of Malkin, Haas and Roland to the board was void, and that all board actions taken after January 17 which have not been approved by a majority of the old four-man board are invalid. They also seek invalidation of proxies solicited by a majority of the new board as "management," an injunction against proxy solicitation and the commitment of corporate funds for that purpose, and other forms of relief.

To date only Liberty has answered the complaint. The individual defendants appeared and moved to dismiss on the ground that the Court does not have jurisdiction over them and, because it is fundamental, I consider this issue first.

B.

The individual defendants are all non-residents of this State and they have not been served personally; they received notice by mail of the hearing on plaintiffs' application for temporary relief.

At this time I consider the motion to dismiss only to the extent that it tests so much of the complaint as puts in issue the right of the individual defendants to hold directorships and other corporate offices in Liberty. No ruling is made herein as to jurisdiction over the individual defendants with respect to any other relief which is sought against them.

As I understand their position, the individual defendants make two arguments: (1) 8 Del.C. § 225 permits a review of election only in the context of stockholder action; it does not confer jurisdiction to review election or appointment to office by directors; and (2) the Court must have jurisdiction over the person of a defendant in order to render a judgment against that person. Scott v. Kay, Del.Supr., 227 A.2d 572 (1967).

First, as to § 225, it provides:

"Upon application of any stockholder, . . . the Court of Chancery may hear and determine the validity of any election of any director, . . . or officer of any corporation, and the right of any person to hold such office, and in case any such office is claimed by more than one person, may determine the person entitled thereto; . . . . In any such application, service or copies of the application upon the registered agent of the corporation shall be deemed to be service upon the corporation and upon the person whose title to office is contested and upon the person, if any, claiming such office; and the registered agent shall forward immediately a copy of the application to the corporation and to the person whose title to office is contested and to the person, if any, claiming such office . . . ."

■ This section is broad in language and purpose: it is in no way limited to a contest arising out of an election by stockholders. On the contrary, the very language used authorizes the Court to hear and determine the validity of any election of any "officer of any corporation;" and it is well known that directors commonly elect corporate officers. And 8 Del.C. § 223 permits directors to create additional directorships and fill them; § 225 is the only statute which gives this Court jurisdiction to review an election of that kind. It would not be logical to read § 225 as providing for judicial review of what stockholders do, but not of director action on the same subject, i. e., election of directors. In short, director action under § 223, whether filling vacancies or staffing newly-created directorships, may be contested under § 225. Compare Automatic Steel Products, Inc. v. Johnston, 31 Del.Ch. 469, 64 A.2d 416 (1949) and Tomlinson v. Loew's Incorporated, 36 Del.

Ch. 516, 134 A.2d 518 (1957) in which this Court undertook just such a review.

■ Second, as to defendants' argument based upon due process requirements, cases on this subject are inappropriate.[1] We are here concerned not with a personal judgment against the individual defendants but only with their respective rights to hold office in a Delaware corporation over which this Court clearly has jurisdiction. That is the contest. In short, defendants' positions, not their pocketbooks, are in jeopardy in this suit. It follows that their second argument is without merit.

There is no attack upon compliance with the procedural requirements of § 225 and, since these have been met, I conclude that this Court has jurisdiction under that statute to determine the right of defendants to hold corporate directorships and offices in Liberty.

C.

I turn now to plaintiffs' argument in support of their motion for temporary relief. Plaintiffs seek an injunction which would limit defendants in their solicitation of proxies and restrain the corporation from taking any action not in the regular course of business. Their right to such relief is based upon the contention that defendants Malkin, Haas and Roland are not validly elected directors of Liberty. That contention is basic to the issues before the Court for decision.

At the December 29 meeting two new directorships were created. Plaintiffs concede that such action was within the power of the board under Liberty's by-laws and 8 Del.C. § 223 which provides in part:

"Unless otherwise provided in the certificate of incorporation or by-laws, vacancies and newly created directorships

---

1. These include Pennoyer v. Neff, 95 U.S. 714, 24 L.Ed. 565 (1877); International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945); McGee v. International Life Insurance Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957).

resulting from any increase in the authorized number of directors may be filled by a majority of the directors then in office, although less than a quorum, or by a sole remaining director . . . ."

But, plaintiffs argue, a "vacancy" within the contemplation of § 223 requires a previous incumbency. They say at the time of the December 29 meeting there was not such a vacancy and therefore the board, as a matter of law, did not have the power to fill the office.

Plaintiffs rely upon the Supreme Court decision in Automatic Steel Products, Inc. v. Johnston, supra, wherein it was stated that:

"This section [Section 30, the predecessor of § 223] has been construed by an unbroken line of decisions of the Court of Chancery limiting the power of Directors to the filling of only those vacancies where there was a previous incumbency." [2]

*Johnston* and its predecessor hold that, as used in the statute, the term "vacancy" implies a previous incumbency, not a newly-created directorship. Defendants argue that here there was a previous incumbency because the corporation had a fifth director until July 1969. Plaintiffs say that there was not because the stockholders had deliberately left the position unfilled at two successive annual meetings called to elect directors.

It seems to me that under the circumstances of this case there was indeed a prior incumbency within the requirements of *Johnston*.[3] Nothing in that case requires an "incumbency" since the last annual meeting of stockholders; hence, by-law provisions as to expiration of a director's term

are not relevant on this question. The key requirement is not when the office was last filled, but how it was created in the first place. I read *Johnston* not as a time limitation but as a restriction upon the power of directors to both create directorships and fill them.

■ But to discuss the current question in terms of *Johnston* is to apply a test no longer valid. This Court must proceed with great caution before ascribing a meaning which differs, or which appears to differ, from a definition made by the Supreme Court. But this case requires a determination of what the word "vacancies" means in the context of § 223 as it now reads. And it is quite apparent that there have been significant changes in both § 223 and the purpose it serves.

In *Johnston* the directors created new directorships and then filled them. The Court viewed the statute as a limitation on the power of directors and held that they could not do what they did. At that time, when "vacancies" were defined in terms of prior incumbency, directors did not have the power to elect or appoint directors; all such power was reserved to stockholders with only one exception: directors in office could choose a director when a vacancy occurred in their number. Given the statutory language, the courts understandably restricted the meaning of the term to the context of a prior incumbency; to have held otherwise would have permitted directors to circumvent the statutory limitation on their power by creating new directorships and filling them.

However, what was once regarded as the prerogative solely of stockholders is now permissible action under § 223. As Pro-

---

2. The cases are Moon v. Moon Motor Car Co., 17 Del.Ch. 176, 151 A. 298 (1930); McWhirter v. Washington Royalties Co., 17 Del.Ch. 243, 152 A. 220 (1930); Gow v. Consolidated Coppermines Corporation, 19 Del.Ch. 172, 165 A. 136 (1933); and perhaps others.

3. It has not been shown that at the annual meetings the stockholders were with-

out power to elect a fifth director, nor is it argued that stockholder inaction reduced the authorized number of directors to four. As I see it, there was a fifth position on the board, there had been an incumbent, the stockholders decided to accept management's recommendation and not fill the office at the respective times.

fessor Folk points out in his new book, The Delaware General Corporation Law, "Over a period of 40 years, § 223 has been progressively amended to enlarge the power of directors to fill vacancies." For present purposes, the significant amendment was made in 1949, some three months after the decision in *Johnston*, when directors in office were authorized to fill "newly created directorships resulting from any increase in the authorized number of directors." 47 Del.L., Ch. 136, § 4.

This represented a substantial change in corporate law policy and mooted the rationale of *Johnston*. In short, there is no purpose in applying the old definition of "vacancies" to the amended statute. To do so would mean, for example, that directors could create new directorships and fill them, but would be helpless to fill an office left unfilled by stockholders for any reason. The critical question concerns the power of directors to staff the board and they now have that to an unlimited extent for new directorships.[4]

Under § 223 directors in office now may fill vacancies in their membership if stockholders do not do so and if other requirements of the statute are met; a prior incumbency is not a condition precedent to such action. In so stating I do not consider any question of fraud upon the stockholders, or an estoppel upon directors to fill a vacancy in their membership, or circumstances amounting to a change by stockholders in the authorized number of directors.

I conclude that Liberty's directors had the power to fill the fifth directorship and it therefore folows that Malkin, Haas and Roland were validly elected to the Board.[5]

### D.

Plaintiffs argue also that Liberty's by-laws provide for the filling of vacancies and newly-created directorships "at a special meeting called for that purpose" and, they say, the December 29 meeting was not called for either of those purposes. They argue that the actions taken were therefore invalid.

Such by-law provisions do, of course, serve a useful purpose and they are enforceable. But both the Delaware Corporation Law and the by-laws of Liberty permit waiver of these requirements. Thus, 8 Del. C. § 229 provides:

"Attendance of a person at a meeting shall constitute a waiver of notice of such meeting, except when the person attends a meeting for the express purpose of objecting . . . to the transaction of any business because the meeting is not lawfully called . . . ."

And the by-laws provide that any director may waive notice of any meeting, and that attendance of a director at any meeting constitutes a "waiver of notice of such meeting" except when he attends for the express purpose of objecting to the transaction of business because the meeting is not lawfully convened. Since the statute is applicable to "any meeting," it follows that it is applicable to a special meeting.

It is undisputed that Grossman and Gross, together with the other directors, attended the December 29, meeting, voted for the action taken and signed the minutes. Under these circumstances I conclude that they waived any defect with respect to notice of the meeting.

\* \* \*

The motion of the individual defendants to dismiss the complaint and plaintiffs' motion for a preliminary injunction will both be denied.

It is so ordered.

---

4. A 1967 amendment to § 223 permits a sole remaining director to fill vacancies and newly-created directorships. 56 Del. L., Ch. 50.

5. In view of this conclusion it is not material as to which nominee filled the vacancy and which of them staffed the newly-created directorships.