Fred G. HOSCHETT, Plaintiff,

v.

## TSI INTERNATIONAL SOFTWARE, LTD., a Delaware corporation, Defendant.

### Civil Action No. 14601.

Court of Chancery of Delaware, New Castle County.

Submitted: April 26, 1996.
Decided: July 19, 1996.

David J. Margules, of Wolf, Block, Schorr and Solis–Cohen, Wilmington, for Plaintiff.

Thomas R. Hunt, Jr. and Donna L. Culver, of Morris, Nichols, Arsht & Tunnell, Wilmington, for Defendant.

1. The complaint includes a count seeking inspection of TSI's books and records, and with respect to that claim there is pending a discovery dis-

## OPINION

ALLEN, Chancellor.

Pending now are cross motions for summary judgment in this suit seeking an order requiring TSI International Software, Ltd. to hold an annual meeting of its stockholders as required by Section 211 of the Delaware General Corporation Law ("DGCL") and, incidental to that relief, to make publicly available to shareholders a stocklist, as required by Section 219 of the corporation law statute.[1] It is admitted that TSI has not held an annual meeting within 13 months of the filing of the complaint (or thereafter for that matter). The case presents the single issue whether stockholder written consent action, which was taken pursuant to Section 228 of DGCL after the filing of the complaint, and that purported to elect directors for TSI, satisfies the requirement to hold an annual meeting and moots the claim stated in the complaint. For the reasons briefly set forth below I conclude that the consent action, assuming that it had the effect of duly designating directors of TSI, did not satisfy the corporation's obligation to comply with Section 211 and hold an annual meeting at which the company's directors are to be elected, in conformity with the certificate of incorporation.

### I.

The material facts are few and apparently not controverted. Plaintiff Fred G. Hoschett is the registered owner of 1,200 shares of common stock of the defendant TSI International Software, Ltd., a Delaware corporation having its principal place of business in Wilton, Connecticut. Formed in 1993, TSI is a privately-held corporation having a total of 962,274 shares of common stock and 860,869 shares of convertible preferred stock issued and outstanding, which are held by less than 40 stockholders of record. Pursuant to its certificate of incorporation, holders of TSI's common and preferred stock vote together on all matters, including the election of directors, with each share of common and pre-

pute. That aspect of the case is being treated separately.

ferred having the right to cast one vote. TSI has never held an annual meeting for the election of directors.

On October 5, 1995, plaintiff filed this action against TSI seeking, among other things (see footnote 1) an order compelling an annual meeting of stockholders for the election of directors. On February 2, 1996, after some discovery, plaintiff moved for summary judgment asserting that there are no material facts in dispute and he is entitled to judgment as a matter of law. TSI responded with a cross motion for summary judgment supported by an affidavit establishing that on November 16, 1995, the company received a written consent representing a majority of the voting power of the corporation that "elected" five individuals each "to serve as a director of [TSI] until his or her successor is duly elected and qualified." On the basis of the validity of that action defendant asserts that it has satisfied the need to hold an annual meeting for the election of directors.

## II.

Summary judgment is appropriate when the record shows that "there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Del.Ch.Ct.R. 56(c); *Gilbert v. El Paso Co.*, Del.Supr., 575 A.2d 1131, 1142 (1990).

Section 211(b) of DGCL provides as follows:

An annual meeting of stockholders shall be held for the election of directors on a date and at a time designated by or in a manner provided in the bylaws. Any other proper business may be transacted at the annual meeting.

Section 211(c) authorizes the Court of Chancery to order a corporation to hold such a meeting, but confers discretion on the Court in the exercise of such power.

Section 228(a) of DGCL provides as follows:

Unless otherwise provided in the certificate of incorporation, any action required by this chapter to be taken at any annual or special meeting of stockholders of a corporation, or any action which may be taken at any annual or special meeting of such stockholders, may be taken without a meeting, without prior notice and without a vote, if a consent or consents in writing, setting forth the action so taken, shall be signed by the holders of outstanding stock having not less than the minimum number of votes that would be necessary to authorize or take such action at a meeting at which all shares entitled to vote thereon were present . . .

Most fundamentally the current motion requires the court to interpret the legal meaning of these two Sections of the corporation code in a way that, to the maximum extent feasible, gives full effect to the literal terms of the language of each. For the reasons that follow I conclude that the mandatory requirement that an annual meeting of shareholders be held is not satisfied by shareholder action pursuant to Section 228 purporting to elect a new board or to re-elect an old one.

The obligation to hold an annual meeting at which directors are to be elected, either for one year or for staggered terms, as the charter may provide, is one of the very few mandatory features of Delaware corporation law. Delaware courts have long recognized the central role of annual meetings in the scheme of corporate governance. *See, e.g., Coaxial Communications, Inc. v. CNA Financial Corp.*, Del.Supr., 367 A.2d 994 (1976); *Speiser v. Baker*, Del.Ch., 525 A.2d 1001 (1987); *Prickett v. American Steel and Pump Corp.*, Del.Ch., 251 A.2d 576 (1969). Even the shareholders' power to approve amendments to the charter does not extend so far as to permit a Delaware corporation legitimately to dispense with the annual meeting. The critical importance of shareholder voting both to the theory and to the reality of corporate governance, *see Blasius Indus., Inc. v. Atlas Corp.*, Del.Ch., 564 A.2d 651 (1988), may be thought to justify the mandatory nature of the obligation to call and hold an annual meeting.[2] The annual

**2.** Whether there should be any aspect of the structuring of corporate governance that should be mandatory in this sense is a subject that has generated a fair amount of scholarly debate over the past decade. *E.g. compare*, Butler, *The Contractual Theory of the Corporation*, 11 Geo. Mason

election of directors is a structured occasion that necessarily focuses attention on corporate performance. Knowing that such an occasion is necessarily to be faced annually may itself have a marginally beneficial effect on managerial attention and performance. Certainly, the annual meeting may in some instances be a bother to management, or even, though rarely, a strain, but in all events it provides a certain discipline and an occasion for interaction and participation of a kind. Whether it is welcome or resented by management, however, is in the end, irrelevant under Section 211(b) and (c) of the DGCL and similar statutes in other jurisdictions.

Plainly plaintiff has established a *prima facie* case for the relief he seeks. *See Speiser v. Baker*, Del.Ch., 525 A.2d 1001, 1005 (1987) (recognizing that plaintiff had made a prima facie case upon proving that he was a stockholder and that several years had elapsed since the last annual meeting); *Saxon Industries, Inc. v. NKFW Partners*, Del. Supr., 488 A.2d 1298 (1984). The question this case presents is whether a controlling shareholder or a majority group may effectively avoid the annual meeting requirement, despite the command of Section 211, by the latter-day expedient of exercising consent to designate directors under Section 228. The Delaware courts apparently have not previously addressed this precise issue.[3] There is of course a rather strong practical argument that it is efficient to recognize such a power or effect. The argument, as I see it, would run as follows: Only a relatively small and more or less tightly bound group of shareholders comprising a voting majority could effectively exercise a Section 228 consent action without a public tender offer. Where such a small and coherent group seeks to exercise control it is especially unlikely that the formality of notice to all shareholders and a meeting will have any practical effect whatsoever. Therefore, if the law requires an annual meeting where a small, controlling group of shareholders is willing to act by consent to designate directors, it is highly likely that the law will simply be commanding expenditure of funds in a pointless exercise.

The flaws in this position appear to be at least three. First, the principle for which this practicality argument must contend is not limited to small coherent groups of shareholders who together can exercise control. If the principle is correct, management of public companies without a small controlling group, could solicit consents (albeit in conformity with SEC proxy rules) to "re-elect" or "elect" some or all of the board without ever having an annual meeting. Admittedly, in that setting shareholders who sought to initiate some corporate change might still initiate action by their own consent solicitation contest, or could resist the effort by others to "reelect" the board by soliciting revocations of consent, but public shareholders would be at some tactical disadvantage as to timing at the least and would arguably find convincing others more difficult than if an annual meeting were held. Second, the purposes served by the annual meeting include affording to shareholders an opportunity to bring matters before the shareholder body, as provided by the corporations charter and bylaws, such as bylaw changes. These other matters of possible business are not necessarily made irrelevant by a consent designation of directors, even if such designation is effective. Finally, while the model of democratic forms should not too

L.Rev. 99 (1989) *with* Bebchuck, *Limiting Contractual Freedom in Corporation Law: The Desirable Constraints on Charter Amendments*, 102 Harv.L.Rev. 1820 (1989). *See generally, Symposium on Contractual Freedom in Corporate Law*, 89 Colum.L.Rev. 1359 (1989).

3. TSI suggests that *Tenaglia v. Psychiatric Hospitals* held that the section 211 meeting requirement is satisfied through the section 228 consent process. *See Tenaglia v. Psychiatric Hospitals*, Del.Ch., C.A. No. 8264, Hartnett, V.C., 1986 WL 10084 (Sept. 9, 1986). To be sure, then Vice Chancellor Hartnett indicated in that opinion that the plaintiff's section 211 claim to compel the holding of an annual meeting was moot because "[a]fter suit was filed an annual meeting was apparently held pursuant to written stockholder consents executed pursuant to 8 Del.C. § 228." *Id.* Nonetheless, that court did ·not specifically decide or discuss the issue presented here because the plaintiff in that case did not press his section 211 claim after the section 228 consent process was utilized and did not make the arguments Mr. Hoschett has made.

strictly be applied to the economic institution of a business corporation (where for instance votes are weighted by the size of the voter's investment), it is nevertheless a not unimportant feature of corporate governance that at a noticed annual meeting a form of discourse (i.e., oral reports, questions and answers and in rare instances proxy contests) among investors and between shareholders and managers is possible. The theory of the annual meeting includes the idea that a deliberative component of the meeting may occur. Shareholders' meetings are mandated and shareholders authorized by statute to transact proper business because we assume that at such meetings something said may matter. Obviously these meetings are very far from deliberative convocations, but a keen realization of the reality of the degree of deliberation that is possible, should make the preservation of residual mechanisms of corporate democracy more, not less, important.

Thus, on balance I find an argument predicated on alleged efficiency and practicality, unpersuasive. I conclude absent unanimous consent that the mandatory language of Section 211(b) places on TSI the legal obligation to convene a meeting of shareholders to elect directors pursuant to the constitutional documents of the firm.

What then is the legal meaning of the clause in Section 228 that authorizes "any action required by this chapter to be taken at an annual or special meeting" to be taken by written consent of shareholders? The established preference of our law is of course to give to such statutory language a literal reading, if that is possible. Thus "any action" must include shareholder action to remove directors from office and to designate persons as directors when there is a vacancy and the constitutional documents of the firm contemplate filling such vacancies by shareholders.[4] See DGCL § 141(k) (removal), § 211(b)(e) (election). Since the term of office of each of the directors of the company had expired, they acted as holdovers even though they continued to hold office. Thus the action to reelect them or to elect their successors logically entailed removal and filling of the resulting vacancy.

The pertinent question is, when directors are designated through a consent process that removes holdovers and designates replacements, as here, for what term do they hold office? It is this question that is raised by the intersection of Section 211 and Section 228 and whose resolution can accommodate the command of each statute. That resolution is based on an interpretation that such directors hold office only until the next annual meeting of the shareholders, at which meeting the whole body of the company's shareholders may participate, to the extent the charter and bylaws define, in the election of the board. That is shareholders may (if the certificate of incorporation and bylaws so provide) remove holdovers and fill vacancies on the board through exercise of the consent power, but doing so does not affect the obligation under Section 211 to hold an annual meeting.

This accommodation is suggested by the fact that appointment of directors to fill vacancies is for such a limited term. See 8 Del.C. § 223(b) (1991) (stating that for a classified board, and unless otherwise provided in the certificate of incorporation or bylaws, directors appointed to vacancies serve until the next meeting at which their class would stand for election); Grossman v. Liberty Leasing Co., Del.Ch., 295 A.2d 749, 751 (1972) (recognizing implicitly that the directors appointed to new directorships in January would face election at the meeting of shareholders in May). Logically, directors appointed to replace ousted holdover directors by the exercise of stockholder consent serve for that same limited term. This was recognized just a few months ago by Vice Chancellor Jacobs in a decision in which he had to determine whether a quorum existed at an annual stockholders' meeting. See Viele v. Devaney, Del.Ch., 679 A.2d 993 (1996). In that case, the entire question of whether a quorum existed was based on the predicate that the directors removed and replaced by stockholder consent two months prior to that meeting would nevertheless

---

4. As I don't find the charter and bylaws of TSI in the record I express, and need to express, no view about the power of a shareholder majority to fill the vacancies that they created.

have rightly stood for election at that meeting if there was a quorum. *Id.* at 1000–01. The interpretation that directors appointed by stockholder consent to replace holdover directors only hold office until the next annual meeting of shareholders respects both the corporation's need to have its directorships filled and the right of all shareholders to attend an annual meeting of shareholders at which the directors of the company will be chosen for the succeeding year, pursuant to the charter and bylaws of the firm.

Thus, in my opinion, the effort of a group constituting a majority of the voting power of the corporation to preclude an annual meeting by acting pursuant to Section 228 is of limited effect. Specifically, while it did remove directors and may well have filled vacancies, it did so only until the next annual meeting of shareholders, which continues to be a mandatory obligation of the corporation. The Court of Chancery, in all events, maintains its traditional discretionary role when administering the equitable remedies of injunction and specific performance. *See* DGCL § 211(c) (court "may" order holding of meeting). In this instance I apprehend no reason why equity should not specifically enforce the legal obligation imposed by Section 211(b). TSI will therefore be ordered to hold an annual meeting and make available a complete list of stockholders as required by those statutory sections.

The parties shall confer and attempt to reach agreement on the specifics of the meeting, and if they cannot reach agreement, plaintiff shall submit a proposed order on notice to defendant.