Sanders, Janet L., J.
This is a shareholder derivative action brought by plaintiff Bernard Miller, who holds shares in the defendant Implant Science Corporation (Implant). The complaint, filed on March 23, 2015, sought to compel an annual stockholder meeting and to put to a vote a compensation plan amendment which conferred stock options on certain company executives. On July 1, 2015, Implant held the meeting and put the amendment to a vote. Plaintiffs counsel now seeks an award of attorneys fees in the amount of $280,000 pursuant to G.L.c. 156D, §7.46(1) (Section 7.46)[1] That statute permits the Court, in its discretion, to award reasonable attorneys fees to the plaintiff on the termination of a derivative action if it finds that the proceeding “resulted in a substantial benefit to the corporation.” Implant not only opposes that fee request but seeks an award of its own attorneys fees, relying on subsection (2) of Section 7.46. That subsection states that a defendant in a derivative action is entitled to its fees if the court finds that the proceeding “was commenced or maintained without reasonable cause or for an improper purpose.” This Court concludes that Implant’s Application must be DENIED, since there was a reasonable basis for commencing suit. I further conclude that the action did result in some benefit to the corporation such that Plaintiffs Application should be ALLOWED, but that the amount of fees requested by plaintiff is not reasonable, and that a substantial reduction is warranted.
Resolution of both applications turns in part on determining what benefit, if any, plaintiff obtained for the corporation by bringing this action. The defendants concede that Implant had not held an annual stockholder’s meeting for almost five years when a written demand for such a meeting was made by plaintiff on January 12, 2015. The defendants also admit that this failure was in clear violation of the law. In opposing the plaintiffs request and seeking to recover its own fees, however, Implant maintains that the suit was premature and entirely unnecessary. It points out that, as soon as Implant received the written demand, the defendants immediately informed plaintiffs’ counsel that they intended to call an annual meeting “within the next 90 days or so.” Since this was not a clear rejection of the demand, then plaintiff (it is argued) was obliged to wait at least 90 days before filing suit. See G.L.c. 156D, §7.42. On April 9, 2015, within that 90-day period (and two weeks after this lawsuit was filed) Implant filed a Form 8K with SEC announcing that it would hold an annual meeting sometime in July 2015. That meeting was ultimately held July 25, 2015 and the amendment put to a vote.
*171 In response, plaintiff maintains that defendants’ initial responses to plaintiffs demand were equivocal, stating only that they expected to hold a meeting, without actually setting any date; given the prior histoiy of the company, it was not unreasonable for the plaintiff to take this as the equivalent of a rejection. Moreover, defendants did not agree to put the amendment to the compensation plan up for a vote until an announcement to that effect on May 14, 2015. Although defendants contend that the proposed amendment did not require shareholder approval, this is far from clear, particularly based on the undisputed fact that Implant had in the past put similar proposals to a vote. In short, this Court concludes that the lawsuit did not run afoul of the demand requirement of Section 7.42. This Court also concludes that there is simply not enough to support defendants’ assertion that this is a “strike suit,” the evil that Section 7.46(2) was designed to address. Plaintiff holds 55,000 shares in Implant, with a value of around $50,000 at the time this action was commenced. Although the lawsuit did settle quickly, that was because plaintiff obtained precisely the benefit he sought to achieve, and this benefit may not have been conferred without resort to legal action.
The manner and speed with which the defendants responded to plaintiffs demand, however, are relevant in determining whether and to what extent the lawsuit conferred some benefit on the corporation substantial enough to justify an award of attorneys fees in the amount requested. This Court has considerable discretion in this regard; in exercising its discretion, I take into account the extent to which an award “furthers the policy objectives of encouraging monitoring behavior by stockholders and protecting the assets of . . . corporations from unreasonable opportunistic demands.” In re James River Group, Inc. v. Shareholder's Litigation, 2008 Del.Ch. LEXIS 4 *6 (Del.Ch. Jan. 8, 2008). Certainly, courts have recognized the importance of shareholder voting rights and the need to enforce the mandatory requirement of annual meetings. See e.g., Hoschett v. TSI Int’l Software, Ltd., 683 A.2d 43, 44-45 (Del.Ch. 1996). It also is fair to infer that the plaintiffs demand and the institution of this lawsuit had something to do with the defendants’ decision to hold a shareholder’s meeting and put the compensation plan amendment to a shareholder vote. On the other hand, it was quite apparent early on in the lawsuit that the benefits that plaintiff sought to obtain could be achieved with little or no additional effort on litigation counsel’s part. Indeed, the defendants make a compelling case for the conclusion that the only reason the lawsuit remained pending as long as it did (which was still only a few months) was to compel defendants to agree on the attorneys fee issue and then, when no agreement was reached, to draw out the litigation in order to drive those fees up.
With all this in mind, this Court turns to plaintiffs counsel's fee petition. In order to produce generally consistent results, from case to case, Massachusetts has adopted the lodestar approach to determine what constitutes a reasonable fee award. The lodestar method requires multiplying the total number of hours reasonably spent preparing and litigating a case by the fair market rate for those services. Fontaine v. Ebtec Corp., 415 Mass. 309, 324 (1993). Hours that are excessive, redundant, duplicative or unproductive are not reasonable. See T&D Video, Inc. v. City of Revere, 66 Mass.App.Ct. 461, 476 (2006), reversed on other grounds, 450 Mass. 107 (2007). In determining the overall reasonableness of the amount requested, this Court may also consider the difficulty of the legal and factual issues involved and the result obtained. Linthicum v. Archarhbault, 379 Mass. 381,388-89 (1979). The party seeking an award has the burden of proving that his request is reasonable under this lodestar standard. Stowe v. Bologna, 417 Mass. 199, 204 (1994). This Court concludes that plaintiff has not sustained that burden.
Implant’s opposition points out many of the deficiencies in plaintiffs fee application. See Implant Memorandum in Support of its Opposition to Plaintiffs Application for Attorneys Fees and Expenses, pp. 11-16. Without repeating all of them here, this Court finds the following to be of particular relevance. Plaintiff seeks reimbursement for eight different attorneys from three different law firms, two of the three firms located in New York where hourly rates are generally higher. The description of the work that these attorneys performed is vague to say the least, with attorneys from the two New York firms working on precisely the same activities. Some of the work was clearly unnecessary: for example, many hours were devoted to an “Emergency Motion to Stay Defendant’s Motion to Dismiss” which was summarily denied. Nor is there any explanation as to why so much work had to be performed by so many lawyers on a case where victory was almost certain from the beginning. Finally, not satisfied with seeking compensation for the actual number of hours spent by these lawyers (some of whom have hourly rates that approach $900), plaintiffs counsel asks that this Court double that amount, citing the difficulty of the case and the fact that it was taken on a contingent basis. But there was nothing difficult about the legal issues, nor did plaintiffs counsel risk much in taking this case on contingency, given the strong indication that, even before suit was filed, success was almost guaranteed.
Taking all of the above into account together with other deficiencies in the fee petition identified by defendants in their memoranda in opposition, this Court concludes that plaintiffs counsel is entitled to a fee of $70,000 together with costs (as requested) in the amount of $5,988.34.

 Plaintiffs also asserts that he is entitled to an award of fees on his direct claim alleging breach of fiduciary duty, but offers no Massachusetts appellate case law in support.