# THE COURT OF CHANCERY OF THE STATE OF DELAWARE

|  |  |  |
|---|---|---|
| MICHAEL M. GOLDBERG, M.D., | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | **C.A. No. 2020-1058-JRS** |
| | ) | |
| CLAUDINE BRUCK, MICHAEL RICE, | ) | |
| and MACROPHAGE THERAPEUTICS, INC., | ) | |
| | ) | |
| Respondents. | ) | |

# MEMORANDUM OPINION

Date Submitted: March 16, 2021
Date Decided: June 23, 2021

R. Karl Hill, Esquire of Seitz, Van Ogtrop & Green, P.A., Wilmington, Delaware and Gregory Zimmer, Esquire of New York, New York, Attorneys for Petitioner.

Richard P. Rollo, Esquire, Sarah A. Clark, Esquire and Angela Lam, Esquire of Richards, Layton & Finger, P.A., Wilmington, Delaware; Barry Kazan, Esquire of Mintz & Gold LLP, New York, New York; and Faith Charles, Esquire of Thompson Hine LLP, New York, New York, Attorneys for Respondents.

**SLIGHTS, Vice Chancellor**

Petitioner, Michael M. Goldberg, M.D., brings this action under Section 225 of the Delaware General Corporation Law against Respondents, Claudine Bruck, M.D., Michael Rice and Macrophage Therapeutics, Inc., to obtain a declaration that Bruck and Rice were not properly placed on the Macrophage board of directors (the "Board"). According to Dr. Goldberg, the appointment of Bruck and Rice to the Board via written consent by Macrophage's sole shareholder, Navidea Biopharmaceuticals, Inc., was not authorized by Macrophage's Certificate of Incorporation and Bylaws.

Respondents have moved to dismiss the action on the ground that, as a matter of clear contract and, therefore, as a matter of law, Bruck and Rice's appointments were duly authorized. After carefully reviewing Macrophage's governing documents, it is clear Bruck and Rice were properly appointed to the Board and Dr. Goldberg's claim to the contrary must be dismissed.

## I. BACKGROUND

I have drawn the facts from well-pled allegations in the Verified Petition (the "Petition") and documents incorporated by reference or integral to that pleading.[1]

---

[1] Verified Petition ("Pet.") (D.I. 1); *Wal-Mart Stores, Inc. v. AIG Life Ins. Co.*, 860 A.2d 312, 320 (Del. 2004) (noting that on a motion to dismiss, the Court may consider documents that are "incorporated by reference" or "integral" to the complaint).

For purposes of the motion, I accept as true the Petition's well-pled factual allegations and draw all reasonable inferences in Petitioner's favor.[2]

## A. Parties

Petitioner, Dr. Goldberg, a resident of New Jersey, is a shareholder of Macrophage.[3] At all relevant times, Dr. Goldberg has served as a director on the Board.[4]

Respondent, Macrophage (or the "Company"), a Delaware corporation, was founded in 2015 to develop medical therapeutic products.[5]

Respondents, Dr. Claudine Bruck, a resident of Pennsylvania, and Michael Rice, a resident of New Jersey, were purportedly appointed to the Board by written consent on November 29, 2018.[6] Those appointments are the subject of this dispute.

## B. The Stock Purchase Agreement and Sub-license Agreement

At the time of Macrophage's formation, Dr. Goldberg and Platinum-Montaur Life Sciences, LLC ("Platinum") entered into a stock purchase agreement (the "SPA") with Macrophage under which Dr. Goldberg and Platinum invested

---

[2] *Savor, Inc. v. FMR Corp.*, 812 A.2d 894, 896–97 (Del. 2002).

[3] Pet. ¶ 1.

[4] Pet. ¶¶ 13–14.

[5] Pet. ¶¶ 4, 6.

[6] Pet. ¶¶ 2–3, 14.

$500,000 in Macrophage in exchange for preferred stock.[7] Navidea was not a party to this agreement.[8] The SPA, at Section 5.6, provided that Macrophage should be managed by a board consisting of three directors—one to be appointed by Dr. Goldberg and Platinum and two to be appointed by Navidea.[9] Relevant here, Section 9.8 of the SPA eliminated third party beneficiaries: "[t]his Agreement is intended for the benefit of the parties hereto and their respective permitted successors and assigns and is not for the benefit of, nor may any provision hereof be enforced by, any other person."[10]

To accomplish Macrophage's purpose to develop immuno-oncology and targeted anti-inflammatory therapies, shortly after its founding, Macrophage received a sub-license from Navidea to utilize intellectual property owned, controlled and licensed to Navidea by the University of California, San Diego (the "Licensed IP").[11] The transfer of rights in the Licensed IP was memorialized in a sub-license agreement dated March 11, 2015.[12]

---

[7] Pet. ¶ 7.

[8] *Id.*

[9] Resp'ts' Opening Br. in Supp. of Mot. to Dismiss the Verified Pet. ("OB") (D.I. 12), Ex. C ("SPA") § 5.6.

[10] SPA § 9.8.

[11] Pet. ¶ 6.

[12] *Id.*

## C. The Disputed Appointments

Prior to November 29, 2018, Dr. Goldberg and non-party, Mark Greene, were the only two directors on the Board.[13]  On November 29, 2018, Navidea issued a notice of written consent purporting to remove all of Macrophage's directors, except for Dr. Goldberg, and appoint Bruck and Rice as new directors ("Navidea's Written Consent").[14]

## D. Relevant Certificate of Incorporation and Bylaw Provisions

Not surprisingly, Macrophage's Certificate of Incorporation ("COI") and Bylaws address the procedures by which a director may be appointed to or removed from the Board.[15]  Both parties point to provisions within these governing documents to support their competing positions regarding the validity of the Bruck and Rice appointments.

Dr. Goldberg relies on the following provisions, as excerpted:

---

[13] Pet. ¶ 13.

[14] Pet. ¶ 14.  Dr. Goldberg "does not challenge the removal of Mark I. Greene or any other director from the Macrophage Board through [Navidea's] Written Consent."  Answering Br. in Opp'n to Resp'ts' Mot. to Dismiss the Verified Pet. ("AB") (D.I. 15) at 7.

[15] OB, Ex. A ("Bylaws"), Ex. B ("COI").

**Article Six of the COI (regarding the form of votes):**

Unless and except to the extent that the Bylaws of the Corporation [] shall so require, the election of directors of the Corporation need not be by written ballot.[16]

**Article II, Section 12 of the Bylaws (regarding notice for Board nominations):**

Nominations for election to the Board of Directors must be made by the Board of Directors or by any stockholder of any outstanding class of capital stock of the corporation entitled to vote for the election of directors. Nominations, other than those made by the Board of Directors of the corporation, must be preceded by notification in writing in fact received by the Secretary of the corporation not less than sixty days before any meeting of stockholders at which the election of directors is held. Such notification shall contain the written consent of each proposed nominee to serve as a director if so elected.[17]

**Article III, Section 2 of the Bylaws (regarding the election of directors at the annual meeting of stockholders):**

[T]he directors shall be elected at the annual meeting of the stockholders by a plurality vote of the shares represented in person or by proxy and each director elected shall hold office until his successor is elected unless he shall resign, become disabled or otherwise be removed.[18]

---

[16] COI Art. Six.

[17] Bylaws Art. II, § 12.

[18] Bylaws Art. III, § 2.

**Article III, Section 3 of the Bylaws (regarding Board vacancies)**:

Unless otherwise provided in the Certificate of Incorporation, vacancies and newly created directorships resulting from any increase in the authorized number of directors may be filled by a majority of the directors then in office, though less than a quorum, or by a sole remaining director. The directors so chosen shall serve until the next annual election and until their successors are duly elected, unless sooner displaced.[19]

**Article III, Section 16 of the Bylaws (regarding the removal of directors)**:

Unless otherwise restricted by the Certificate of Incorporation, these Bylaws or applicable law, any director or the entire Board of Directors may be removed, without cause, by the holders of a majority of shares entitled to vote at an election of directors.[20]

For their part, Respondents rely upon the following provisions in support of their position that Bruck and Rice were duly appointed to the Board as a matter of law:

**Article Four, Section 4.2(a) of the COI (regarding the voting rights of common stockholders):**

Subject to such voting rights of any other class or series of securities as may be granted from time to time pursuant to this certificate of incorporation, any amendment thereto, or the provisions of the laws of the State of Delaware governing corporations, voting rights shall be vested exclusively in the holders of Common Stock. Each holder of

---

[19] Bylaws Art. III, § 3.

[20] Bylaws Art. III, § 16.

Common Stock shall have one vote in respect of each share of such stock held.[21]

**Article II, Section 11 of the Bylaws (regarding actions by written consent of the common stockholder(s)):**

> Unless otherwise provided for in the Certificate of Incorporation . . . any action which may be taken at any annual or special meeting of such stockholders, may be taken without a meeting, without prior notice and without a vote, if a consent or consents in writing, setting forth the action so taken, shall be signed by the holders of outstanding stock having not less than the minimum number of votes that would be necessary to take such action at a meeting . . . . [22]

Dr. Goldberg interprets the COI and Bylaws as requiring that, until the occurrence of an annual meeting, only current Board members may remove or appoint directors to the Board. With this construction of the constitutive documents in mind, Dr. Goldberg argues that since he was the only duly appointed director as of November 29, 2018, only he had the power to fill vacancies on the Board until the next properly noticed annual meeting of the Company. He also argues that Navidea's failure to give sixty-day notice prior to Bruck and Rice's appointments to the Board violated the Bylaw's Article II, Section 12 notice requirement.

In response, Respondents cite Article Four, Section 4.2(a) of the COI and Article II, Section 11 of the Bylaws, which, when read together, authorized Navidea,

---

[21] COI Art. Four, § 4.2(a).

[22] Bylaws Art. II, § 11.

as the sole common stockholder, to act by written consent to appoint two directors to the Board at any time and without notice.[23] According to Respondents, this construction is the only reasonable construction of Macrophage's governing documents and, therefore, the Court may reject Dr. Goldberg's requested Section 225 declaration as a matter of law.

### E. Procedural History

On February 20, 2019, Macrophage filed a separate action against Dr. Goldberg in this Court, alleging breach of fiduciary duty and conversion and seeking a declaration that Dr. Goldberg's decision to transfer substantially all of Macrophage's assets to a newly formed entity that he controlled, M1M2 Therapeutics, Inc., without Board or stockholder authorization violated Section 271 of the Delaware General Corporate Law (the "Plenary Action").[24] The Court held trial in the Plenary Action in December 2020, and issued its post-trial decision finding in favor of Macrophage earlier today. Two weeks after the conclusion of trial, Dr. Goldberg filed this action seeking a declaration that Bruck and Rice were never duly appointed to the Board.[25] Respondents promptly filed a motion to dismiss on January 11, 2021, and this Court held a hearing on the motion

---

[23] COI Art. Four, § 4.2(a); Bylaws Art. II, § 11.

[24] *Macrophage v. Goldberg*, 2019 WL 1406147 (Del. Ch. Mar. 22, 2019) (COMPLAINT).

[25] D.I. 1.

immediately following post-trial oral argument in the Plenary Action, on March 16, 2021.[26]

## II. ANALYSIS

The standard for deciding a motion to dismiss under Court of Chancery Rule 12(b)(6) is well-settled:

> (i) all well-pleaded factual allegations are accepted as true; (ii) even vague allegations are "well-pleaded" if they give the opposing party notice of the claim; (iii) the Court must draw all reasonable inferences in favor of the non-moving party; and (iv) dismissal is inappropriate unless the plaintiff would not be entitled to recover under any reasonably conceivable set of circumstances susceptible of proof.[27]

"The [charter and] Bylaws [of a corporation] constitute part of a binding broader contract among the directors, officers and stockholders formed within the statutory framework of the Delaware General Corporation Law."[28] "Because corporate charters and bylaws are contracts, our rules of contract interpretation apply."[29] On a motion to dismiss a breach of contract claim, "a trial court cannot choose between two differing reasonable interpretations of ambiguous

---

[26] D.I. 7; D.I. 24.

[27] *Savor*, 812 A.2d at 896–97 (citation omitted).

[28] *BlackRock Credit Allocation Income Tr. v. Saba Cap. Master Fund, Ltd.*, 224 A.3d 964, 977 (Del. 2020) (internal quotations omitted) (citation omitted).

[29] *Hill Int'l, Inc. v. Opportunity P'rs L.P.*, 119 A.3d 30, 38 (Del. 2015).

documents."[30] Rather, "[d]ismissal [of a claim grounded in contract], pursuant to Rule 12(b)(6), is proper only if the defendants' interpretation is the only reasonable construction as a matter of law."[31]

As noted, Respondents argue that Navidea's Written Consent was authorized by Article II, Section 11 of the Bylaws (the "Written Consent Bylaw"), which grants stockholders the right to take "any action which may be taken at any annual or special meeting . . . without a meeting, without prior notice and without a vote" so long as there exists a written consent "setting forth the actions so taken, . . . signed by the holders of outstanding stock having not less than the minimum number of votes that would be necessary . . . to take such action at a meeting."[32] Dr. Goldberg does not dispute that Navidea was authorized under the Bylaws to act by written consent in certain circumstances, and for good reason.[33] At the time Navidea's Written Consent was delivered, Navidea was the sole common stockholder of

---

[30] *Vanderbilt Income & Growth Assocs., L.L.C. v. Arvida/JMB Managers, Inc.*, 691 A.2d 609, 613 (Del. 1996).

[31] *Coyne v. Fusion Healthworks, LLC*, 2019 WL 1952990, at *5 (Del. Ch. Apr. 30, 2019) (citation omitted); *VLIW Tech., LLC v. Hewlett-Packard Co.*, 840 A.2d 606, 615 (Del. 2003) (same).

[32] Bylaws Art. II, § 11.

[33] AB at 20.

Macrophage.[34] Dr. Goldberg also does not dispute that the requirements of 8 *Del. C.* § 228 were followed, or that under Delaware law, "[s]tockholders may, unless the certificate of incorporation otherwise provides, act by written consent to elect directors."[35] And he does not argue that Navidea's Written Consent was defective as to form.[36]

Dr. Goldberg's only argument that the appointments of Bruck and Rice were unauthorized rests on the fact that Navidea improperly initiated the written consent process to fill vacancies on the Board prior to the annual meeting of stockholders.[37] First, Dr. Goldberg notes that Article III, Section 3 of the Bylaws provides that vacancies on the Board may be filled by a sole remaining director and argues this means that only he, as the sole director, could fill Board vacancies prior to the annual

---

[34] AB at 1 ("Macrophage's motion to dismiss this proceeding is the latest installment in an ongoing series of actions by Macrophage's 100% common stockholder, non-party Navidea Biopharmaceuticals, Inc. . . .").

[35] 8 *Del. C.* § 211(b); AB at 21–24 (discussing only Respondents' failure to follow the letter of the Bylaws, without any mention of specific DGCL provisions); *see also MM Cos., Inc. v. Liquid Audio, Inc.*, 813 A.2d 1118, 1126 (Del. 2003) ("The stockholders' power is the right to vote on specific matters, in particular, in an election of directors.").

[36] AB at 21–24 (failing to engage with or even mention the Written Consent Bylaw).

[37] AB at 20 ("No amount of legalese in the Stockholder Written Consent can overcome the fact that Navidea did not comply with the rules governing the appointment of interim directors to replace retired or removed directors or the election of permanent directors nominated by stockholders.").

meeting.[38]   But, as Respondents correctly observe, the permissive language of Article III, Section 3 provides that the sole remaining director *may* fill Board vacancies; it does not prohibit the common stockholders from exercising *their* right to fill vacancies as well, including by written consent.

Dr. Goldberg then moves to Article III, Section 2 of the Bylaws, which provides that "directors shall be elected at the annual meeting of the stockholders by a plurality vote of the shares represented."[39]  That provision, however, must be read in context with others in the Bylaws governing Board appointments.  For instance, the Written Consent Bylaw itself perfectly tracks the language in 8 *Del. C.* § 228(a), which permits stockholders to act by written consent on any issue that would otherwise be taken up at an annual meeting or special meeting.[40]  As confirmed by our law and the Bylaw provision upon which Dr. Goldberg relies, one such issue is

---

[38] Bylaws Art. III, § 3.

[39] Bylaws Art. III, § 2.

[40] *Compare* Written Consent Bylaw ("Unless otherwise provided in the Certificate of Incorporation, any action required [by this chapter] to be taken at any annual or special meeting of stockholders of a corporation, or any action which may be taken at any annual or special meeting of such stockholders, may be taken without a meeting, without prior notice and without a vote, if a consent or consents, setting forth the action so taken, shall be signed by the holders of outstanding stock having not less than the minimum number of votes that would be necessary to authorize or take such action at a meeting at which all shares entitled to vote thereon were present and voted and shall be delivered to the corporation [in the manner required by this section]."), *with* 8 *Del. C.* § 228(a) (same).

12

the appointment of directors.[41]  Section 228(a) has no timing constraints; it "permits immediate action."[42]

One potential statutory roadblock to the effectiveness of Navidea's Written Consent is 8 *Del. C.* § 211(b), which permits stockholders to act by majority written consent only in certain circumstances.[43]  But, notably absent in Section 211(b) is *any* restriction on actions by written consent when stockholders act through unanimous consent, as Navidea did here.  Thus, under Delaware law and Macrophage's governing documents, since directors are to be elected at Macrophage's annual meeting, they may be appointed at any time by unanimous written consent in lieu of that meeting.

---

[41] Bylaws Art. III, § 2; *Hoschett v. TSI Int'l Software, Ltd.*, 683 A.2d 43, 44 (Del. Ch. 1996) (recognizing in principle Section 228's application to the election of directors); *Jimenez v. Palacios*, 2019 WL 3526479, at *20 (Del. Ch. Aug. 2, 2019), as revised (Aug. 12, 2019), *aff'd*, 237 A.3d 68 (Del. 2020) (same).

[42] *Brown v. Kellar*, 2018 WL 6721263, at *9 (Del. Ch. Dec. 21, 2018); *see also* Edward P. Welch, et al., 2 *Folk on the Delaware General Corporation Law* § 228.03 (6th ed.) ("Section 228 authorizes immediate stockholder action without a meeting[.]"); *Cirillo Fam. Tr. v. Moezinia*, 2018 WL 3388398, at *7 (Del. Ch. July 11, 2018), *aff'd*, 220 A.3d 912 (Del. 2019) ("[Section 228] bestows stockholders with the power to take swift and wide-ranging action.").

[43] 8 *Del. C.* § 211(b) ("Stockholders may, unless the certificate of incorporation otherwise provides, act by written consent to elect directors; provided, however, that, if such consent is less than unanimous, such action by written consent may be in lieu of holding an annual meeting only if all of the directorships to which directors could be elected at an annual meeting held at the effective time of such action are vacant and are filled by such action.").

Finally, Dr. Goldberg cites Article II, Section 12 of the Bylaws, which provides that "[n]ominations, other than those made by the Board of Directors of the corporation, must be preceded by" written notice within sixty days "before any meeting of stockholders at which the election of directors is held."[44] The plain language of this provision makes clear, however, that the prescribed notice is only required in instances where a meeting of stockholders occurs. This is entirely consistent with the Written Consent Bylaw, which confirms that, when stockholder written consents are utilized to carry out corporate actions, no prior notice is required.[45] Thus, in the context of Navidea's Written Consent, Navidea was not required to provide sixty days' notice prior to the appointment of Bruck and Rice because they were not appointed at a "meeting of stockholders."

The only reasonable interpretation of Macrophage's constitutive documents, when read collectively, is that Bruck and Rice were properly appointed to the Board by Navidea's Written Consent, which was authorized by the Written Consent Bylaw and not otherwise prohibited by any other provision of the COI, Bylaws or DGCL.[46]

---

[44] Bylaws Art. II, § 12.

[45] Bylaws Art. II, § 11.

[46] The parties spilled much ink discussing the applicability of Section 5.6 of the SPA to Navidea's Written Consent. While this provision provides Dr. Goldberg and Platinum the right to appoint one director to the Board, and Navidea the right to appoint two, Dr. Goldberg argues that because Navidea was not a party to the SPA and because the SPA prevented third-party beneficiaries, Section 5.6 gave Navidea no rights. This entire discussion is moot given that the appointment of Navidea's two directors was consistent

14

## III.    CONCLUSION

Based on the foregoing, the motion to dismiss must be GRANTED.

**IT IS SO ORDERED.**

---

with Macrophage's governing documents.  Whether Section 5.6 of the SPA granted Navidea the right to appoint one, two or ten directors would not change the fact that Navidea, as sole common stockholder, could appoint directors by written consent, and this right is not limited in the COI or Bylaws, including by number of Board seats.  That is precisely what Navidea did here.  In any event, to the extent the SPA restricted Navidea's rights as the 100% common stockholder of Macrophage by limiting its designated Board seats to two, Navidea's Written Consent was entirely consistent with that limitation.